## BERTHA MAGILL v. BOATMEN'S BANK, Appellant.

### Division Two, June 23, 1921.

1. **DORMITORY OR CLUB HOUSE: Fire Escapes.** A building seven stories high, occupied by a general athletic club, in which the members and their guests lodged and slept, in which a large kitchen was maintained in which the members and their guests ate their meals, and in which were maintained also a gymnasium and swimming pool, and in which at the time it was destroyed by fire approximately one hundred persons were asleep in different rooms, plaintiff and her husband on the fifth floor, was a dormitory, within the meaning of the statute (Sec. 10668, R. S. 1909) which provided that "all buildings of non-fire-proof construction three or more stories in height, used for manufacturing purposes, hotels, dormitories, schools, seminaries, hospitals or asylums, shall have not less than one fire escape for every fifty persons or fraction thereof for whom working, sleeping or living accommodations are provided above the second story."

2. **EVIDENCE: Hearsay: Statement of Patient to Physician of Prior Condition.** The physician, as an expert, is not competent to testify what statements the plaintiff made to him as to the loss of blood and pains suffered prior to the time she consulted with him. In giving his opinion he may testify not only what he observed, but what the patient told him about her present symptons, but he cannot testify what she told him respecting her past physical condition, for that is mere hearsay.

Appeal from St. Louis City Circuit Court.—*Hon. Frank Landwehr*, Judge.

REVERSED AND REMANDED.

*Lehmann & Lehmann, Abbott, Fauntleroy, Cullen & Edwards* and *Curlee & Hay* for appellant.

(1) The building was not a hotel or a dormitory, but was a "club house," for which the number of fire

escapes should be determined by the Building Commissioner of the City of St. Louis. Hence the plaintiff in resting her action upon the theory that the building was a hotel or dormitory, proceeded upon the wrong theory and was not entitled to go to the jury. R. S. 1909, secs. 10666, 10667, 10668; Metzler v. Terminal Hotel Co., 135 Mo. App. 410; 4 Words & Phrases, p. 3349; 2 Words & Phrases. (Second Series), p. 213; Hillsdale v. Rideout, 46 N. W. 373, 82 Mich. 94; Commonwealth v. Pomphret, 137 Mass. 564, 50 Am. Rep. 341. (2) The evidence herein conclusively shows that plaintiff did make her escape from the building by one of the fire escapes provided by the defendant and that whatever injuries she sustained were the result, not of inadequate fire escape equipment, but of the fire itself, for which defendant was not responsible and should not be held liable. The evidence of Doctor Fry detailing what plaintiff said she had suffered prior to his examination of her, was hearsay and highly prejudicial. Holloway v. Kansas City, 184 Mo. 39; Aronovitz v. Arky, 219 S. W. 620; Poumeroule v. Cable Co., 167 Mo. App. 539; Gibler v. Railroad, 129 Mo. App. 103; Freeman v. Insurance Co., 195 S. W. 548; Brady v. Traction Co., 140 Mo. App. 421.

*Leonard, Sibley & McRoberts* for respondent.

(1) The building was a hotel or dormitory, or both, within the meaning of the fire escape laws. Secs. 10666 to 10671, R. S. 1909; Sec. 421, Revised Code of St. Louis 1912; Sec. 94, Municipal Code of St. Louis 1900; Sec. 336, Revised Code of St. Louis 1912. (a) This building was expressly held by this court to have been a dormitory in cases which grew out of the same fire in this same building. Ranus v. Boatmen's Bank, 214 S. W. 156; Newell v. Boatmen's Bank, 216 S. W. 918. (b) The fire escape laws are to be liberally construed to effectuate their salutary purpose. Yall v. Snow, 201 Mo.

521. (c) Definitions of a dormitory: Words & Phrases; 14 Cyc. 868. (d) Definition of a guest: Bunn v. Johnson, 77 Mo. App. 596. (e) A member of an incorporated club may be a "guest" of the club. Harvey v. Mo. Athl. Club, 261 Mo. 576. (2) Defendant's injuries were due directly to the absence of ample legal fire escapes. The question of proximate cause is for the jury. Anderson v. Missouri G. & C. Co., 178 S. W. 737; Power v. Railroad, 244 Mo. 1. The jury was fully instructed on the question. Defendant asked that the jury be instructed on the question and cannot now complain. (3) The testimony of Dr. Fry was properly admitted. Coghill v. Q. O. & K. C., 206 S. W. 912. At worst, the testimony was merely cumulative on a question not in dispute. The testimony was immaterial under the facts. It was not reversible error. Meredith v. Krauthoff, 191 Mo. App. 149; Porterfield v. Am. Smelting Co., 210 S. W. 124.

MOZLEY, C.—This action is one for damages which was brought against defendant in the Circuit Court of the City of St. Louis, Missouri, on January 15, 1918.

Plaintiff claims to have been injured in a fire which destroyed the Missouri Atheletic Club located in the Boatmen's Bank Building in said city. The fire occured the night of March 9, 1914, according to the testimony.

Plaintiff's husband was manager of said Club and she resided with him at that place. Plaintiff escaped with her life, but in a seriously injured condition, which will be referred to later.

The building was seven stories in height, and extended west from Fourth Street, on Washington Avenue, 112 feet, and north, on Fourth Street from Washington Avenue, 135 feet.

Plaintiff and her husband occupied Room Number 9 on the 5th floor, which overlooked Fourth Street. She was awakened in the early morning of the night aforesaid, and found the building enveloped in flames,

densely full of smoke. Excitement, confusion and panic among those awake reigned supreme. At the time of the fire the building contained approximately one hundred other persons who were asleep, and thirty-one, unable to find means of escape, perished in the flames.

The charging part of the petition reads as follows:

"On the early morning of March 9, 1914, while she was asleep in her said room, fire suddenly broke out on or about the third floor of said building; that she immediately sought as long as she was able in the intense heat and stifling smoke, for means of escape from said building; that because of said negligent, improper and illegal construction of said building, the flames and heat and suffocating smoke from said fire so quickly spread through all parts of said building, that plaintiff's life was greatly imperiled and she was cut off from escape except in the manner and to her injuries, as hereinafter alleged; that said negligent, improper and illegal construction of said building was a directly contributing cause of plaintiff's said injuries hereinafter described; that because of defendant's failure to provide sufficient proper and legal stairways and fire escapes, and balconies and openings thereon, as required by law and as above set forth, plaintiff was forced to attempt to escape at different parts of the said building, and to remain in and about said building in the stifling heat and suffocating smoke and darkness for a long period of time, to her injuries as hereinafter alleged; that defendant's failure to provide sufficient and legal stairways, fire escapes, balconies and openings was the direct cause of plaintiff's said injuries."

The petition further alleges that because of these things she was compelled to escape "through long winding hallways onto an iron stairway enclosed with corrugated iron, built outside of said building and in immediate contact therewith, without lights, and so arranged that she was unable to get off of said stairway except by coming back into the said burning building; that the

said stairway, with the corrugated iron surrounding it, was intensely hot and filled with flames and smoke escaping from the said burning building.''

Further pleads that she was compelled to ''breathe into her lungs the hot, stifling smoke and air contained in said building and in said enclosed stairway; that while escaping she was insufficiently clad, was exposed to the cold wind and air, causing a severe cold and fever, which lasted for a long time thereafter; that her feet and hands and face were badly cut with glass and other objects, and burned and blistered, and she was badly bruised over her entire body; that in escaping from said building, she twisted and turned her left ankle, that has caused her great pain ever since and will always be greatly impaired; that while escaping down said outside enclosed stairway, particles of fire and burning material and debris fell on and against her and she received a severe and painful blow on the face; that she had sustained a fracture of her left arm which, at the time of said fire, was bandaged and in splints; that in making her escape said bandage and splints were torn loose, which caused her said arm to swell badly and greatly aggravate its condition and intensify the pain and suffering, all of which retarded a recovery for many months; that on account of her inexperience in seeking escape from said burning building and in effecting her escape, she received profound and intense shock to her whole nervous system, because of which she was and is and will always be, a nervous wreck; that she was confined to her bed for a considerable time; that she is unable to sleep soundly at night; that she is excitable; that she lost thirty to thirty-five pounds in weight; that her stomach and bowels are impaired and will always be in bad condition, and she will be compelled to consult doctors and take medicines; that her eyes were rendered very weak and the use of them is permanently impaired; that her power of prolonged concentration and her memory are permanently impaired.''

She further alleges that she had destroyed in said fire jewelry, silverware, money, trunks, suitcases, handbag and wearing apparel of the value of $1700.

For all of which she prays judgment for $15,000 and costs of this action.

On objection of the defendant the count for property and money destroyed in the fire was stricken out, and the petition was amended and the prayer for judgment remained the same, $15,000.

Defendant answered with a general denial of the averments of the petition, and a plea of assumption of risk on the part of plaintiff.

Trial before the court and a jury resulted in a verdict for plaintiff in the sum of $15,000.

Defendant filed in due time its motion for a new trial which was overruled and the cause was duly appealed to this court.

The facts will be further referred to in the course of the opinion following.

I. In defendant's assignments of error the first is: that the court erred in adopting the construction of the statutes and ordinances in question advanced by the plaintiff and upon which the petition was bottomed.

This is a crucial question as to the plaintiff's right to recover in the case; in fact, we regard other questions as incidental and of no consequence, unless the court committed error upon this proposition.

Dormitory.

The precise contention made by the defendant is: "That the burned building was not a *hotel* or a *dormitory,* but was a *club house,* for which *the number of fire escapes should be determined by the Building Commissioners of the City of St-Louis."* (Italics ours.)

The petition alleges that said "club was operated as a general club, boarding and lodging house, dormitory and hotel."

This club was a place where members and their guests lodged and slept, where a large kitchen or cook

room was maintained and where they ate their meals. There was also maintained a gymnasium, swimming pool and many other forms of amusement.

The proviso in Section 10668, Revised Statutes 1909, reads as follows:

"Provided, however, that all buildings of non-fire-proof construction three or more stories in height, used for manufacturing purposes, hotels, *dormitories,* schools, seminaries, hospitals or asylums, shall have not less than one fire escape for every fifty persons or fraction thereof for whom working, sleeping or living accommodations are provided above the second story, and all public halls which provide seating room above the first or ground story shall have such number of fire escapes as shall not be less than one fire escape for every one hundred persons, calculated on the seating capacity of the hall," etc.

The character of the building in question has been settled by this court as a *dormitory.* [Ranus v. Boatmen's Bank, 279 Mo. 332, 214 S. W. 156; Newell v. Boatmen's Bank, 279 Mo. 663, 216 S. W. 918.

These opinions were handed down by Division Number One. They related to the burning of the same building and the same facts were present as in the instant case except that in those cases the parties were burned to death, and in the instant case plaintiff was fortunate enough to escape from the burning building with her life. We rule, in harmony with said cases, that said building was a dormitory.

II. It is contended that the court erred in refusing defendant's requested peremptory instruction at the close of the plaintiff's case. As has been seen the demurrer should not have been sustained on account of defendant's contention that said building was not a dormitory, and as to the facts we think they were ample to go to the jury. We overrule the contention.

Peremptory Instruction.

III. Complaint is made that the court erred in admitting the testimony of Dr. Fry, detailing what plaintiff said she had suffered prior to his examination of her. The testimony relating to this matter is as follows:

"Q. Well, in diagnosing her case, doctor, of course you always ask the patient certain questions and so forth about just what they are suffering from and so forth? A. Yes.

"Q. Did she tell you that she had had any passing of blood?

"MR. HAY: Just a moment. I object to that, as it relates to the past and not then existing symptom.

"MR. SIBLEY: I will modify the question. Did she tell you at that time in telling her condition that she was having passing of blood?

"MR. HAY: Just a moment. I object to that, your Honor. It relates to history and is mere hearsay.

"THE COURT: I will overrule the objection. Objection and exception.

"A. Yes, she told me she had had—

"MR. SIBLEY: What do you call that, doctor, in medical terms? A. Well, we speak of it as metralgia.

"Q. And that means what, doctor? A. Well, that means any irregular passage of blood that is different from the normal menstruation.

"Q. Did she complain, doctor, of suffering pain? A. Yes, she had pains associated with it."

On cross-examination by Mr. Hay: "Q. Doctor, as I understand, what you said about her passing blood was based upon what she told you had taken place prior to the time she saw you, is that correct? A. Yes, sir.

"MR. HAY: I renew my motion and objection to the testimony, your Honor, and move that it all be stricken from the record as being based on statements made—

"THE WITNESS: I might say there that I wouldn't be sure that she made all of these complaints as having

been prior to the time she saw me. I don't know but that she had some of them between there. I would not be real sure about that.

"Q. I mean she was referring to what had taken place before the consultation and not during the consultation? A. Yes, that is right, during or between consultations.

"Q. They all related to symptoms antedating the time of the consultation, is that correct? A. Well, certainly, relating to, circumstances of the kind before the first consultation, but, as I say, I don't remember now whether between the time of the two consultations.

"Q. But when you had the consultation with her the symptoms of that kind she was speaking about—A. Were what she told me.

"Q. Were what she told you about what had taken place before that, is that correct? A. Yes, sir."

Thereupon Mr. Hay moved that it all be stricken from the record; the court overruled the motion, and objection was made and exception saved.

Defendant cites as a athority for his contention the case of Gibler v. Railroad, 129 Mo. App. l. c. 103, which is we think one of the leading cases on the question, from which we quote as follows:

"The rule of law involved in the exception to this expert testimony is examined with discrimination and care in that well-tested repository of sound law, Greenleaf on Evidence, vol. 1, sec. 162, of the sixteenth edition. The rule stated in this treatise and accepted by most, if not all, courts, is that a physician may give in evidence his expert opinion of the condition of a patient, founded on his observation or on the patient's statement of present subjective symptoms, or both, and in giving his opinion the physician may testify not only of what he observed, but what the patient told him about present symptoms."

The assaulted portion of Dr. Fry's testimony was erroneous and constitutes reversible error. [Gibler v.

288 Mo.—32

Railroad, 129 Mo. App. l. c. 103; Holloway v. Kansas City, 184 Mo. 19; 1 Greenleaf on Evidence (16 Ed.), sec. 162; Insurance Co. v. Mosley, 8 Wall. 397.]

Judge Burgess, who wrote the opinion in the Holloway-Kansas City case, said: "The court holds in that case (referring to Ins. Co. v. Mosley, *supra*) that the physician can only give in evidence the declarations of a patient as to 'a present existing pain or malady.' The statements of plaintiff with respect to her past physical condition are mere hearsay, and should not have been considered by the expert in expressing his opinion as a witness as to her physical condition at the time of the trial. The decided weight of authority and the better reason we think supports this contention."

On account of this error the cause will have to be reversed and remanded for a new trial. It is so ordered. *Railey* and *White, CC.,* concur.

PER CURIAM:—The foregoing opinion of Mozley C., is hereby adopted as the opinion of the court. All of the judges concur.

## PER CURIAM OPINION ON MOTION FOR REHEARING AND TO TRANSFER TO BANC.

Respondent has filed herein a motion for rehearing, and also an alternative motion to transfer this cause to Court in Banc. It is earnestly insisted by respondent, that the error pointed out by the court in its original opinion, relating to the testimony of Dr. Fry, resulted in no harm to appellant, as the same facts are alleged to have been proven by other witnesses.

We find, upon examination of the record, that plaintiff testified as follows:

"Q. Have you had any passage of blood? A. Yes, I had—I pass blood from my bowels and I have had hemorrhages of the bladder too."

She was not testifying as an expert, but as to her actual condition at some time not mentioned. Hence, her evidence was competent if it related to the injuries sustained at the time of fire. It was not the same class of evidence sought to be shown by the testimony of Dr. Fry. In other words, the above testimony of plaintiff should be classed as direct evidence, while that of Dr. Fry is considered expert evidence. It does not appear from *respondent's testimony*, that the fire had anything to do with this passage of blood. There is nothing to indicate that it was not the ordinary blood which flows from menstruation. It does not appear that it was the kind of blood that Dr. Fry was basing his opinion on as an expert. No other witness except plaintiff had been asked about this passage of blood *before* Dr. Fry was examined, and an objection made to his testimony.

Here, then, was Dr. Fry, a leading specialist on nervous diseases, called upon to testify in behalf of plaintiff, and was confessedly permitted to give his opinion as to her future condition based in part on her *incompetent* narration of her past condition as detailed to him, outside the presence of either court or jury. The evidence thus offered was clearly incompetent. [Aronovitz v. Arky, 219 S. W. l. c. 623-4; Holloway v. Kansas City, 184 Mo. 19, 82 S. W. 94; Freeman v. L. P. Ins. Co., 195 S. W. l. c. 548; Gibler v. Railroad, 129 Mo. App. l. c. 103.]

If plaintiff's counsel, with the view of augmenting the damages in this class of cases, will persist in getting before the jury improper testimony, to which timely and appropriate objections are made, they have no one to blame but themselves if the case is reversed and remanded for a new trial on account of the admission of such illegal evidence. Especially is this true, in the case before us, as plaintiff's counsel *were not content* to have Dr. Fry give an opinion based on plaintiff's testimony *given at the trial,* but insisted on the opinion of Dr. Fry based on the *hearsay* testimony aforesaid. It was the

province of the jury to pass upon the facts. They might not have believed that the passage of blood described by plaintiff, *if it actually occurred,* had anything to do with the *fire* or *injuries* sustained herein. It is evident that counsel for respondent considered the evidence objected to as *very important,* or they would not have been so insistent on having it admitted in the face of a timely and proper objection. Our ruling, in respect to this matter, has been clearly and easily understood. If counsel saw fit to speculate thereon they must suffer the consequences. It is not the province of this court to determine the extent of the injuries inflicted by the admission of said evidence.

It is fair to assume, that when counsel introduce a noted specialist, or one standing high in his profession, that the jury are expected to give his testimony full credit in passing upon plaintiff's *compensation.* If it is based upon matters prohibited by law, and timely objections have been made to its introduction, it becomes the plain duty of this court to reverse and remand the cause for a new trial. As heretofore stated, an objection was made to the incompetent testimony at the *earliest* opportunity. Said objection was not available as to the evidence of respondent for the reason heretofore shown.

Counsel for plaintiff, in their motion to transfer, seem to be of the impression that Commissioner Mozley, who wrote the opinion in this cause, is no longer a member of the court. His resignation does not become effective until July 1, 1921, and he now occupies the same position that he did when the original opinion was written.

We deem it unnecessary to extend this opinion further. The authorities heretofore cited plainly stamp the testimony complained of by appellant as improper, and we see no reason for making an exception in this case to the well settled rule of law heretofore stated.

Respondent's motions for a rehearing and to transfer to the Court in Banc are respectively overruled.