## LAURA M. HIBBLER v. KANSAS CITY RAILWAYS COMPANY, Appellant.

In Banc, February 9, 1922.

1. **NEGLIGENCE: Alighting from Moving Car: Open Door.** A passenger had seen a notice posted in the street car requesting passengers to leave by the front entrance, the customary exit; the car slowed down as it approached the street where she wished to leave it, she stepped into the vestibule at the front end, the door opened and she stepped off, and was injured; the car was still moving, and moved a full length after she stepped off; the door was controlled by the motorman, was required to be kept closed while the car was in motion, and when it opened she supposed the car had stopped, but the evidence does not show who opened the door; the night was dark, she could not see objects outside, the car was running smoothly and its motion was imperceptible to her. *Held,* that it was a question for the jury to determine whether she was negligent in failing to discover that the car was in motion, and a demurrer to the evidence was properly refused.

2. ———: ———: ———: **Invitation to Alight.** To alight from a moving street car is negligence unless there is something unusual in its operation. But an invitation to a passenger to leave a moving car is itself negligence, and those who obey it are not necessarily negligent. Where there was a positive rule forbidding the front door of a street car to be opened until it had come to a full stop, a passenger knew the rule was customarily observed and there was a posted notice requesting passengers to leave the car

by the front door, the usual exit, the opening of the door, whether by the motorman or some one else, was an invitation to her to alight from the car, and, the door being under the control of the motorman, the company was negligent in allowing it to be opened while the car was moving.

3. ———: Pleading: General and Special Damages: Proof of Erysipelas and Removal of Ovaries. General damages are those which necessarily and by implication of law result from the negligent act; special damages are the natural but not the necessary result of the injury complained of, and must therefore be specifically alleged. Where the door of a street car was opened while the car was yet in motion and plaintiff stepped off, allegations in her petition that she was "thereby seriously and permanently injured and crippled; that the muscles of her left arm, leg, hip, side and shoulder were cut, bruised, torn and contused, and all her female organs and kidneys were so injured as to impair their proper functions, and rendered her permanently sick, sore, lame, nervous, weak, dizzy, debilitated and sad" are not sufficiently specific to permit proof that a short time after the injury erysipelas developed in her person, or that about a year and a half afterwards an operation was performed in which her ovaries were removed, her attending surgeon testifying that her condition rendered necessary the performance of the operation. The allegations did not expressly or impliedly indicate a purpose to prove the development of erysipelas, and they were altogether too general to indicate that the removal of the organs was a necessary consequence of the injury, and hence proof tending to aggravate the damages on account of either was improper.

4. ———: ———: ———: Variance. Proof of special damages not embraced within the general allegations does not amount to a variance within the meaning of the statute (Sec. 1272, R. S. 1919), and hence the error in admitting evidence of such special damages is available to defendant without making an affidavit showing in what respect he has been misled. The question is not one of misleading, but the evidence is inadmissible in being broader than the allegations, and therefore its admission, in that it tends to enhance the damages pleaded, amounts simply to error, and timely objection to its admission will suffice to preserve it for review.

Appeal from Jackson Circuit Court.—*Hon. Willard P. Hall*, Judge.

REVERSED AND REMANDED.

· *E. E. Ball, L. T. Dryden* and *Chas. N. Sadler* for appellant.

(1) The court erred in overruling appellant's demurrer to the evidence at the close of the respondent's case and at the close of the whole case. Stepp v. Ry. Co., 85 Mo. 229; Jackson v. Butler, 249 Mo. 342; Hight v. Bakery Co., 168 Mo. App. 431; Gunn v. United Rys. 270 Mo. 517. (2) The court erred in permitting the respondent, over appellant's objection, and exception, to offer evidence of an operation performed upon her in March, 1919. Hall v. Coal Co., 260 Mo. 351; Johnson v. Frisco Ry., 192 Mo. App. 8; Shafer v. Harvey, 192 Mo. App. 502; Martin v. Rys. Co., 204 S. W. 589; Wesner v. Railroad, 177 Mo. App. 117; Baldwin v. Rys. Co., 218 S. W. 955. (3) The court erred in permitting the respondent, over the objection and exception of the appellant, to show a condition of the respondent, resembling erysipelas or an infection. Authorities under point 2. (4) Appellant properly saved for review, by this court, the action of the trial court in overruling appellant's objections to the admission of evidence as to an operation upon the respondent, and also as to erysipelas. Section 1452, R. S. 1919; McDonald v. Ry. Co., 165 Mo. App. 75; Hall v. Coal Co., 260 Mo. 370; Moellman v. Lumber Co., 134 Mo. App. 492; Slaughter v. Railroad, 116 Mo. 275; Gold v. Jewelry Co., 165 Mo. App. 161; Hegberg v. Ry. Co., 164 Mo. App. 546; Hydraulic Brick Co. v. Green, 177 Mo. App. 316; Spaulding v. City of Edina, 122 Mo. App. 69; Bailey v. Kansas City, 189 Mo. 512; Mahany v. Rys. Co., 228 S. W. 821; Bergfeld v. Dunham, 202 S. W. 253; Simms v. Dunham, 203 S. W. 652; Boles v. Dunham, 203 S. W. 408; Murdock v. Dunham, 206 S. W. 915; Kirn v. Harvey, 208 S. W. 479; State ex rel. v. Ellison, 270 Mo. 653; Beave v. Transit Co., 212 Mo. 331; Fink v. United Rys. Co., 219 S. W. 679; Miller v. Rice-Stix Dry Goods Co., 223 S. W. 437; Johnson v. Rys. Co., 178 S. W. 239; Smith v. Rys. Co., 227 S. W. 866; Martin v. Rys. Co., 204 S. W. 589; Cooley v. Rys. Co., 170 Mo. App. 42.

*Prince, Harris, Hamilton & Beery* for respondent.

(1) The court committed no error in overruling defendant's demurrer at the close of plaintiff's case, nor in overruling the same at the close of the whole case. Campbell v. Sub. Ry. Co., 175 Mo. 175; Lamb v. Mo. Pac. Ry. Co., 147 Mo., 186; Erickson v. Ry. Co., 171 Mo. 659; Weller v. Ry. Co., 120 Mo. 648; Gratiot v. Mo. Pac. Ry. Co., 116 Mo. 466. (2) The admission of evidence as to an operation and a condition resembling erysipelas does not constitute reversible error. Seckinger v. Mfg. Co., 129 Mo. 603; McDonald v. Met. St. Ry. Co., 219 Mo. 480; Thomas v. Ry. Co., 187 Mo. App. 425; Cooley v. Elev. Ry. Co., 170 Mo. App. 42; Lyons v. Met. St. Ry. Co., 253 Mo. 143; Fledderman v. Transit Co., 134 Mo. App. 205; Thompson v. Ry. Co., 111 Mo. App. 465; Spart v. Ry. Co., 213 Mo. 517; Brown v. St. Joseph, 184 Mo. App. 667; Wilkins v. Ry. Co., 101 Mo. 93; Hall v. Mfg. Co., 260 Mo. 351; Doster v. Ry. Co., 158 S. W. 441; Janos v. Levee Dist., 183 S. W. 700. (3) Even though evidence of operation and erysipelas was erroneously admitted, it amounted to no more than a variance, which has not been properly preserved for appellate review. Sec. 1846, R. S. 1909; Mellor v. Railroad Co., 105 Mo. 471; Cossitt v. Ry. Co., 224 Mo. 97, 110; Fisher v. Realty Co., 159 Mo. 562. (4) Evidence of septicemia and of surgical operation was, at most, but a variance which was rendered immaterial by defendant's failure to file affidavit showing in what respect it had been misled as per Sec. 1272, R. S. 1919. Reeves v. Larkin, 19 Mo. 192; Fischer v. Max, 49 Mo. 405; More v. King, 178 S. W. 124; Newton v. Harvey, 202 S. W. 249; Lane v. Rys. Co., 228 S. W. 872; Cossitt v. Railway, 224 Mo. 97. (5) Allegations of sickness and impairment of functions of female organs authorize proof of any sickness or any impairment traceable proximately to the occurrence. Fledderman v. Transit Co., 134 Mo. App. 199; Hall v. Mfg. Co., 260 Mo. 351. (6) Evidence of the surgical operation upon plaintiff was admissible for the additional purpose of corroborating

the fact of pelvic trouble, and also of the permanency of her impairment.   Brown v. St. Joseph, 184 Mo. App. 667;  Lyons v. Met. St. Ry. Co., 253 Mo. 143.   (7)  Defendant having introduced evidence tending to show that the condition in question could not have resulted from violence and having submitted an instruction thereon, is estopped from demanding a retrial of that issue.   Wise v. Joplin  Co., 85 Mo. 178, 188;  Berkson v. Railway, 144 Mo. 211;  Mitchell v. Brown, 190 S. W. 354;  Gayle v. Foundry Co., 177 Mo. 427;  Boatmen's Bank v. Trust Co., 205 S. W. 629.   (8)  The evidence in question being competent for one purpose, it became the duty of defendant to ask an instruction limiting its application.   Hitt v. Hitt, 150 Mo. App. 631;  Sotevier v. Railway, 203 Mo. 702;  Wilkins v. Railway, 101 Mo. 93.   (9)  The word "impairment" as it has been judicially defined, includes total loss or destruction.   Goodloe v. Met., 120 Mo. App. 194;  State v. Krahmer, 117 N. W. 873;  Blackmore v. Cooper, 106 N. W. 566.

WALKER, J.—The plaintiff, in an action for damages for injuries alleged to have been received by her in alighting from one of defendant's street cars, recovered judgment for eleven thousand dollars.  From this judgment the defendant appealed.

The injury occurred in October, 1917, at about nine o'clock p. m.   Plaintiff became a passenger on one of defendant's cars operating upon Fifteenth Street in Kansas City.   Near the intersection of Fifteenth and Elmwood Streets, she pressed the signal button indicating her desire to alight at Elmwood.   Her evidence tended to show that the car slowed down, and, for the purpose of alighting, she approached the front door, the proper place of exit.   The door, controlled by the motorman, was opened by him to allow passengers to alight and to board the car, and was kept closed while the car was in motion. As she approached the door it was opened; she stepped down to the street while the car was still in motion, to the extent that it ran its full length from where she alighted

until it stopped. She thought it had stopped, and on account of the motion she fell on her side and received serious injuries, the nature of which will be noticed later.

The petition alleges that it was the custom of passengers on all of the defendant's cars to alight at the front exit; they were so directed by a printed sign in the cars; and at the time of the injury and long prior thereto, the defendant had promulgated Rules 24 and 5, which were introduced in evidence, as follows:

"No. 24. STARTING.—Motorman will never start car without signal from conductor. Front exit door will be closed before starting, and will not be opened until car comes to a complete stop. Conductors will keep rear door closed until car comes to full stop. Folding doors on all cars so equipped will be closed before signal to start is given.

"No. 5. The motorman is held responsible for the safety of passengers boarding or leaving cars via the front exit."

The negligence of the defendant is thus alleged: "The defendant carelessly or negligently caused or permitted the said front exit door to be opened, thereby causing plaintiff to understand and believe the said car was at a standstill, and that it was safe for plaintiff to alight from said car at said time and place; and by reason of the facts aforesaid carelessly and negligently invited plaintiff to alight from said car at said time and place."

The plaintiff testified that after she opened the folding doors to go into the vestibule, "the motorman opened the door and I walked out."

As to whether she actually saw the motorman open the door, she testified:

"Q. Did you see the motorman open the door, or did you just see the door open? A. Well, he had his hand up there on the—

"Q. (Interrupting) Well now, you were right there. What I am asking you, do you testify that the motorman opened that door, or that the door was opened by somebody? A. Well, the door was opened.

"Q. You don't know who opened it, as a matter of fact? A. I don't know who opened it.

"Q. And how fast do you think the car was going when you stepped off of it? A. I don't know how fast it was going. Anyway, it went almost the length of the car ahead of me."

She further testified that at the front end of all the cars, she had seen a notice requesting passengers to leave by the front entrance; until that night she never had known of a motorman opening the door until the car stopped, and she thought the car had stopped or she would not have stepped off.

The defendant offered the deposition of the motorman in charge of the car, who testified that someone he did not know, without his permission, opened the door of the car, and the plaintiff stepped off while the car was in motion.

Both sides presented evidence of physicians who testified as to the nature of plaintiff's injuries.

I. The defendant offered a demurrer to the evidence which was overruled, for which error is assigned. It is contended that the plaintiff should have been nonsuited because, as is alleged, her own negligence contributed to the injury.

**Demurrer to Evidence: Opening Door of Moving Car.**

A passenger is not negligent *per se* so as to prevent recovery for an injury received in alighting from or boarding a moving car merely because the car was moving. That is conceded, But the defendant claims that the plaintiff was negligent in failing to discover that the car was in motion. Perhaps if she had known this fact, she would have waited until the car stopped, or in stepping down she might have braced herself so as to prevent a fall. She testified she thought the car was stopped because the door was open. It was dark, she could not see objects outside, and her evidence indicates that the car was running smoothly, the line being equipped with such a track and running gear that the motion of the car was

imperceptible to her; and she concluded from the door having been opened that the car was not in motion. It was a question for the jury to say whether she was negligent in failing to discover that the car was in motion.

II. The defendant contends that the demurrer should have been sustained because there is no evidence of negligence on its part. In support of this contention the case of Gunn v. United Rys. Co., 270 Mo. 517, is relied on, where the question arising in cases of injuries to passengers boarding and alighting from moving cars was considered. The rule there stated and supported by the cases cited, is that there can be no recovery by a passenger injured in attempting to board a car after it has started, or in alighting from a moving car before it comes to a full stop, unless there is something out of the ordinary in the motion of the car to cause the injury. If it is merely shown that the car was moving at the time, with nothing unusual in the motion, a passenger, either in alighting from or boarding the car, assumes the risk of the injury. The cases, however, point out that the rule does not obtain where there is something more than ordinary in the movement of the car, such as a sudden jerk. It is also noted that an invitation or direction from those in charge of the car or train, to a passenger to leave it or board it, would affect the question of the passenger's contributory negligence, as well as that of the defendant's negligence. For instance, a call of "all aboard" is notice to passengers that the train is about to start (LeDuc v. Railroad, 159 Mo. App. l. c. 144); stopping a street car at a street intersection (McNally v. Railroad, 145 Mo. App. l. c. 130) is notice to passengers that they may alight there; calling out a station (Dye v. Railroad, 135 Mo. App. l. c. 257; Richmond v. Ry. Co., 49 Mo. App. 109) is notice that a train or car is coming to a stop at that point. [McGee v. Railroad, 92 Mo. l. c. 218.] If a passenger is invited or directed in any manner to alight from a car when it would be dangerous to do so, and acts upon such direction, he is not necessarily negligent. On the

*Alighting from Moving Car: Unusual Invitation.*

other hand, those operating the car would be negligent in extending such invitation if to act upon it would be dangerous to passengers. [Loyd v. Railroad, 53 Mo. 509; Fulks v. Ry. Co., 111 Mo. l. c. 341; Wyatt v. Railway Co., 62 Mo. l. c. 410; Kelly v. Railroad, 70 Mo. l. c. 608.]

Here was a positive rule of the defendant requiring the front door to be closed before starting, and not to be opened until the car came to a full stop. The custom to observe that rule was known to the plaintiff. Those operating the car must have known it was understood by passengers alighting from the car that the door would not be opened until the car came to a full stop. The defendant would not have made such a rule unless it had concluded risk would attend leaving the door open. It does not matter whether the motorman himself opened the door or someone else opened it; those in charge of the car were negligent in allowing it to be opened when it should have been closed. Permitting the door to be opened before the car came to a standstill was notice to the plaintiff that the car had stopped and constituted an invitation to her to alight, if its motion was so smooth as to be imperceptible. It was, therefore, for the jury to weigh the evidence and determine whether the defendant was negligent. The demurrer to the evidence was, therefore, properly overruled.

III.   The plaintiff offered evidence to show that a short time after the injury erysipelas developed on the plaintiff's person; also, in about a year and a half afterwards, an operation ws performed in which the plaintiff's ovaries and Fallopian tubes were removed, with evidence of the attending surgeon that her condition rendered it necessary to perform the operation. The admission of this evidence, it is contended, was erroneous, because not within the allegations of the petition. The injuries inflicted by reason of the accident are set forth in the petition, as follows: "Thereby seriously and permanently injuring and crippling plaintiff, and the muscles, ligaments and nerves of her

*Allegata et Probata.*

left arm, leg, hip, side and shoulder were cut, bruised, torn and contused, and the bones thereof wrenched, strained and sprained, *and all of her female organs and kidneys were so injured as to impair their proper functions,* and rendered plaintiff permanently sick, sore, lame, nervous, weak, dizzy, debilitated and sad; that plaintiff has suffered great physical pain and mental anguish, and will so continue to suffer during the remainder of her natural life; that she has lost and will in the future lose much of her natural rest and sleep.''

IV.   Since the rejection of the opinion in this case as prepared by Commissioner White in Division No. 2 and the reargument of the same in Banc, I have examined with further care the question of the admissibility of the testimony of the attending physician and surgeon concerning the development of erysipelas and the condition of the female organs of the plaintiff after the injury and the consequent necessity of their removal.   As to the testimony in respect to erysipelas, the physician testified that it usually arises from a bruise or a contusion, and that from such an injury as the plaintiff was shown to have received, erysipelas might or might not result.   In other words, that erysipelas might naturally but not necessarily result from the injury, and the admission of the testimony in regard thereto is therefore subject to the rule we will discuss later in reference to the testimony concerning the operation performed on the plaintiff.

Plaintiff contends inasmuch as the petition alleges that she was permanently injured and ''that all her female organs and kidneys were so injured as to impair their proper functions and render her permanently sick,'' that this general allegation is sufficient to render admissible proof of the specific condition, found by the surgeon which necessitated an operation.   It is scarcely necessary to say in this connection, what has often been said by this court, that general damages are those which necessarily and by implication of law result from the act or

default complained of; and that special damages are the natural but not the necessary result of the injury complained of and must therefore be specifically alleged. The necessity of their specific allegation is to enable the defendant to have notice thereof and be prepared to meet the same upon the trial. The question demanding immediate consideration therefore is, were the general allegations of such a nature as to indicate to the defendant that testimony would be offered in regard to the development of erysipelas and to the removal of the plaintiff's organs; otherwise no opportunity would be afforded the latter to meet this proof.

There were no allegations which expressly or impliedly indicated a purpose to rely on proof of the development of erysipelas as an element of damages; and, as well said by the Commissioner, "an allegation as to the impairment of the functions of an organ does not involve the necessity of its removal, even if this impairment is permanent." It therefore follows that the general allegation is not such as to indicate that the removal of the organs was a necessary consequence of the injury; hence, the testimony as to the operation was, under the pleading, improperly admitted in that, while tending to aggravate the damages, it afforded the defendant no opportunity to meet the same at the trial. This question was discussed with the compilation of much case learning on the subject by WILLIAMS, J., in Hall v. Coal and Coke Co., 260 Mo. l. c. 370, in harmony with the conclusion reached herein.

V. The plaintiff contends, however, that the testimony we have held to have been improperly admitted constituted a variance from the allegations of the petition and that the defendant could not avail itself of the error Variance. in its admission in the absence of an affidavit as required by the statute that "no variance between the allegation in the pleading and the proof shall be deemed material, unless it has actually misled the adverse party, to his prejudice, in maintaining his action or

defense upon the merits; when it shall be alleged that a party has been so misled, that fact shall be proved to the satisfaction of the court, by affidavit showing in what respect he has been misled, and thereupon the court may order the pleading to be amended upon such terms as shall be just.'' [Sec. 1272, R. S. 1919.]

The contention of plaintiff rests upon a misconception of the meaning of a variance as used in the statute. A well-recognized definition of this term is that it is a difference between the pleading and the proof in some matter which, in point of law, is essential to the cause or claim. Or, stated more tersely, it is a substantial departure from the issue in the evidence adduced.

It is evident from these definitions and the plain wording of the statute that no such variance as is insisted upon by the plaintiff is meant unless it appears that the defendant has been, as stated, misled to his prejudice. There is no question of misleading presented by this record. The admission of the testimony as to plaintiff having been infected with erysipelas and the removal of her ovaires. etc., subsequent to the injury was inadmissible in being broader than the petition and prejudicial as tending improperly to enhance the damages.

An approval of the construction of the statute as insisted upon by plaintiff would necessitate, during the progress of the trial, in addition to timely objections made and saved, the filing of an affidavit to each adverse ruling to defendant's objections to the admission of the testimony. Neither the language of the statute nor the spirit or purpose of our code gives sanction to such a course.

To recognize it would be to strain the rules of construction and overrule a line of cases extending from the establishment of our jurisprudence down to the Hall Case, 260 Mo. 351, in which, quoting from GRAVES, J., in Moore v. St. Louis Transit Co., 226 Mo. l. c. 710, in emphasizing the inadmissibility of testimony of the character of that under review, we said: ''For instance, an injury to the lung might superinduce pneumonia, but not necessarily

so. An injury to the nervous. system might produce blindness, but not necessarily so. These conditions or diseases may as readily come from other causes as from the physical injury or injuries. In such case the petition should be specific, to the end that the defendant could come prepared to meet the issues and show that the condition or disease was not caused by the physical injury. This he cannot do if the unpleaded conditions or diseases are sprung upon him for the first time at the trial.''

The St. Louis Court of Appeals in Fink v. United Rys. Co., 219 S. W. 679, makes this concrete application of the rule: A petition in an action for injuries, alleging that plaintiff's legs and knees were severely bruised and sprained, her hip and back severely sprained and wrenched, and the ligaments, tendons, and muscles permanently stretched, weakened, and stiffened, that headache, dizziness, nervousness, and sleeplessness had resulted, and that her nervous system was permanently shocked and injured, did not authorize the admission of evidence of loss of weight, motor paralysis, and the formation of fluid in both knees, as, though natural results, these were not necessary results of the injuries alleged.

The Springfield Court of Appeals in Provance v. Railroad, 186 S. W. l. c. 957, holds that the trial court committed error in permitting a plaintiff to prove the impairment of his eyesight in the absence of any specification of such injury in the petition. The court in discussing the question says: ''The impairment of a person's eyesight is certainly not the necessary or even the natural result of a fall where the place of contact and injury is the back of the head and neck;'' citing in support of this conclusion Hall v. Coke Co., supra; Shafer v. Harvey, 183 S. W. (Mo. App.) 670.

The Kansas City Court of Appeals in Smith v. Railroad, 199 S. W. 707, held that in an action for personal injuries, a petition alleging that as a result thereof plaintiff was badly mashed, bruised and injured and received a strangulated hernia, etc., was insufficient to permit proof of a showing of loss of hearing.

The foregoing recent cases but exemplify the rule many times reiterated in our reports that timely objections made and saved will suffice to preserve for review objections to testimony of the character here under consideration, without a resort to the statute cited.

For the error assigned, the judgment of the trial court is reversed and the cause is remanded. All concur, except *David E. Blair, J.,* who concurs in paragraphs 1, 2, 3 and 4, and dissents as to paragraph 5 and result; *Woodson, J.,* absent.