Alex **TAYLOR**, Respondent,

v.

The **KANSAS CITY SOUTHERN RAILWAY COMPANY**, a Corporation, Appellant.

No. 44778.

Supreme Court of Missouri.

Division No. 2.

Oct. 8, 1956.

Richard S. Righter, Robert D. Youle, James F. Walsh, Kansas City, Lynn M. Ewing, Nevada, for appellant.

Jo B. Gardner, Monett, for respondent, Alex Taylor.

BOHLING, Commissioner.

This case is under submission on rehearing. The action is under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for negligent personal injury to plaintiff, Alex Taylor. Plaintiff recovered a judgment for $45,000 against his employer, The Kansas City Southern Railway Company. Upon a former trial he recovered $40,179, and, upon appeal, a new trial was granted because of the unfair prejudicial effect of a demonstration before the jury. Taylor v. Kansas City Southern Railway Co., 364 Mo. 693, 266 S.W.2d 732. The defendant, on original submission of the instant appeal, contended error was committed in the admission of certain evidence and in the giving of plaintiff's main instruction; and, also, that the verdict was excessive and should be reduced by remittitur. The issues stressed on rehearing relate to the admission of certain evidence on behalf of the plaintiff and the amount of the verdict and judgment. We adopt in part the statement and rulings, shown in quotations herein, of the opinion of Barrett, Commissioner, on original submission.

"Mr. Taylor lived in Siloam Springs, Arkansas, and worked in the nearby town of Watts, Oklahoma, as a telegraph operator and 'call boy.' He was injured in the early morning hours of January 1, 1952, when he fell down a flight of steps near the depot in Watts, as he was about the business of calling a train crew. The railroad's liability for negligent failure to furnish a safe place to work was submitted upon the hypothesis that the railroad 'maintained a set of steps with railings beside the steps and a light post at the foot of the steps * * * and for a period of several months before said date the light bulb in said light post, if any, had been burned out, and said hand rail, if any, had become weak and rotted, and for a year or more cinders had been permitted to remain on said steps, if any, and, as a result of all these things * * * said steps were obstructed and slippery and a necessary light was not being maintained and kept burning at said steps, and the hand rail along said steps was insufficient to assist and aid in descending said steps.'

"The eight or nine steps adjacent to the depot consisted of railroad ties with wooden handrails on either side. Mr. Taylor said that he hurriedly stepped down with his right foot on either the first or second step and 'my feet flew out from under me. I grabbed at the rail on the right side. I threw my lantern out across the railroad track and grabbed at the hand rail and it broke off * * * and fell right own on top of me.' In a deposition he had previously said that he did not know what caused him to fall. The railroad seizes upon this statement and the fact that the instruction submits three elements or factors as constituting negligence, one of which was an insufficient handrail, and urges that the instruction is prejudicially erroneous in that it fails to require the jury to find that the railroad had either actual or constructive knowledge of the unsafe condition of the handrail. Mr. Taylor and at least one other employee testified that over a period of eighteen months cinders and gravel had washed onto the 'hollowed out' steps, that the light had been out for over a year and, after the event, that the upright posts were rotten and the hand-

rail insecure. Aside from the fact that the three factors of negligence were conjunctively submitted, and their evidentiary support is not questioned, the hypothesized defect as to the handrail was 'of such a nature that the finding of its existence carries with it the clear inference of knowledge of defendant of its prior existence, [and] an instruction omitting such a finding cannot be said to be prejudicially erroneous.' Hatfield v. Thompson, Mo., 252 S.W.2d 534, 543; Schonlau v. Terminal R. Ass'n [of St. Louis], 357 Mo. 1108, 1116, 212 S.W.2d 420, 425. Although attention has been repeatedly called to the fact that it is the better and safer practice to require the finding of knowledge, either actual or constructive, in the particular circumstances of this case the omission may not be said to constitute such prejudicial error as to demand the granting of a new trial. Reese v. Illinois Term. R. Co., Mo., 273 S.W.2d 217, 223."

Plaintiff, the first witness, and later Mrs. Dana L. Fenno, a neighbor, over objections interposed and motions to strike on the ground the testimony was "not an issue in the case," "improper and prejudicial," "not an issue in this case at all", see objections in Connor v. Kansas City Rys. Co., 298 Mo. 18, loc. cit. 21, 250 S.W. 574, loc. cit. 575, testified, briefly outlined, that shortly before Christmas, 1952, following the first trial, which started December 8, 1952, plaintiff had a "nervous collapse," lost all reason, was raging, beat his wife, was placed in jail and then in the neuropsychopathic ward in the Hillcrest Memorial hospital in Tulsa. Plaintiff also testified that when he came to himself in the hospital he was confined in a place that had heavy screens and bars on the windows, that the door locked on the outside and had a four-inch window through which they could peek and see how one was getting along, and that he was confined in the hospital from December 17, 1952, until February 19, 1953.

In his brief on rehearing plaintiff states: "It is our contention now, as it was in our original brief, that this testimony was within the issues. It went to the nature and extent of plaintiff's injuries. One of the issues, as disclosed by the allegations in the petition, was injuries to plaintiff's nervous system." Point III, A, of plaintiff's original brief reads: "There is no claim for damages in the petition for nervous collapse and this evidence was not introduced as an element of damages, but rather to show that plaintiff did sustain the injuries alleged." Plaintiff's petition, so far as material, charged: "that plaintiff's nerves and central nervous system were greatly injured, shocked and affected; * * * that plaintiff has headaches, suffers from nervousness and inability to obtain proper sleep and rest; that plaintiff suffered from shock and received a concussion and contusion of and to his brain and brain cells; that plaintiff has suffered a change in his personality and is nervous and irritable which has affected his ability to deal with the public and with people * * *." We agree with the statement in plaintiff's original brief that his petition does not claim damages for a nervous collapse. The pertinent allegations here involved are general in nature. The nervous collapse shown by plaintiff's evidence might but does not inevitably follow the injuries plaintiff pleaded. The record discloses that the amended petition upon which plaintiff went to trial was filed October 8, 1952, and that plaintiff's nervous collapse occurred thereafter. If the evidence was improper and prejudicial, plaintiff was not entitled to have the jury consider it. On original submission we considered the evidence was not within the issues and unfairly prejudicial. We remain of that view as developed hereinafter.

Hall v. Manufacturers' C. & C. Co., 1914, 260 Mo. 351, 372, 168 S.W. 927, 933 [10], Ann.Cas.1916C, 375, held impotency did not necessarily result from the injuries alleged and should have been specifically pleaded. Court en banc considered, with respect to the pleadings, that general damages are those which necessarily and by

implication of law result from the injury and special damages are the natural but not the necessary result of the injury pleaded; that conditions or diseases which inevitably follow an injury may be shown under general allegations of the injury; and that special damages must be specifically pleaded to admit of proof of conditions and diseases which do not necessarily result from the injury pleaded; overruling cases approving the admission of evidence under general allegations of conditions and diseases which might naturally and commonly follow an injury. This, to the end that fairness in the trial of causes prevail, and that defendants be given an opportunity to prepare for what they are required to meet at the trial.

The following cases are illustrative of injuries which should have been specifically pleaded: Connor v. Kansas City Rys. Co., 298 Mo. 18, 21–23, 250 S.W. 574, 575, 576 [1, 2], traumatic neurosis; Hibbler v. Kansas City Rys. Co. (Banc), 292 Mo. 14, 237 S.W. 1014, 1016 [3–5], erysipelas and removal of plaintiff's organs; Chawkley v. Wabash Ry. Co. (Banc), 317 Mo. 782, 297 S.W. 20, 28 [16, 17], insane, mentally unbalanced; Provance v. Missouri So. R. Co., Mo.App., 186 S.W. 955, 957 [5], impairment of eyesight. See Hart v. Kansas City Pub. Serv. Co., Mo.App., 154 S.W.2d 600, 604 [9–11]; Proctor v. Ruppert, 236 Mo. App. 684, 159 S.W.2d 328, 335 [3, 4]; Ziervogel v. Royal Packing Co., Mo.App., 225 S.W.2d 798, 803 [9]; Muth v. St. Louis & M. R. R. Co., 87 Mo.App. 422, 433 (II).

There was nothing of record at the time the questioned testimony was admitted to connect plaintiff's nervous collapse with the injuries pleaded. Thereafter, Dr. Milford S. Ungerman, of the Hillcrest Memorial hospital, testified on direct examination, in part: "With specific reference to the nervous aspect of his problem, Mr. Taylor was * * * upon admission to the hospital, exceedingly nervous, tremulous. He was very tense and had a very worried and pitiful expression on his face." On cross-examination the witness testified that the fact that plaintiff's wife admitted to him she had been out with another man "was a minor contributing factor" to plaintiff's condition; and asked: "Do you think that the deep upset emotional condition you found on your first examination of Mr. Taylor had been caused by the fact she told him she was going out with some lady friends to play cards, whereupon he suddenly lost all reason and struck her several blows, his local doctor was called and had him placed in protective custody in jail, then brought him to Tulsa, Oklahoma?" he answered: "A. No, I don't think it could entirely, no. I think it was contributed to by all of these other experiences which were more disturbing because they had knocked him out of his ability to earn a livelihood. That was the real fly in the ointment." He characterized plaintiff's said condition as "traumatic neurosis." Consult Connor v. Kansas City Rys. Co., supra.

Plaintiff argues that Dr. Ungerman's testimony connected his nervous collapse or mental disturbances with the injuries sued for; that the witness further stated on cross-examination "the main thing was the injury that he had sustained"; and that this was a typical case of waiver of defendant's objection, stressing Ernst v. Union Depot B. & T. Ry. Co., Mo., 256 S. W. 222, 225 [6]. The record shows that page 2 of the hospital record (plaintiff's Exhibit 28), on which was narrated the occurrence here under consideration, was excluded from the jury. The testimony may have served to connect plaintiff's said condition with the injuries sued for, a fact not theretofore established; but the objection that the testimony was not within the allegations of plaintiff's petition remained in the case. In the Ernst case three judges concurred in the result, one concurred in certain other portions of the opinion and the result, and two dissented. The opinion did not announce a controlling principle of law on the instant issue. Coleman v. Haworth, 320 Mo. 852, 8 S.W.2d 931, 934 [10];.

Viquesney v. Kansas City, 305 Mo. 488, 266 S.W. 700, 702 [6]; State ex rel. Columbia Nat. Bank of Kansas City v. Davis, 314 Mo. 373, 284 S.W. 464, 467 [1].

■ Where a party, as here, has seasonably objected to evidence on a given subject by one witness and his objection is overruled, he is not required or expected to become indecorous by repeating his objection when like testimony by another witness is offered, Holmes v. Terminal R. Ass'n of St. Louis, 363 Mo. 1178, 257 S.W. 2d 922, 926 [6] and cases cited, and does not waive his objection by cross-examining or by offering countervailing evidence in an effort to render the incompetent evidence innocuous. Levin v. Hilliard, Mo., 266 S. W.2d 573, 577 [3] and authorities cited; Arnold v. Maryville, 110 Mo.App. 254, 261–262, 85 S.W. 107, 108, col. 2; Miles v. Chicago, R. I. & P. Ry. Co., 76 Mo.App. 484, 489; Ziervogel v. Royal Packing Co., Mo. App., 225 S.W.2d 798, 803 [8]; Annotation, 33 L.R.A.,N.S., 103; McCormick, Evidence, §§ 55, 57.

Plaintiff also argues that while the petition did not allege a nervous collapse as a ground of special damages, yet the testimony constituted competent evidence of a condition which was pleaded as a basis of recovery. In Miller v. W. E. Callahan Const. Co., Mo.App., 46 S.W.2d 948, 951 [7, 8], the trial court sustained defendant's objection to testimony that one of the x-rays disclosed a healed fracture of the spine; orally instructed the jury to disregard any testimony of the fracture; and gave defendant's instruction that plaintiff could not recover for the fracture. The court, in ruling, stated: "It is well agreed that an injury or condition not pleaded, and hence not available as a basis for the allowance of damages, may nevertheless constitute competent evidence of a condition or injury which is pleaded as a basis of recovery." Plaintiff also cites, among others, Smart v. Raymond, Mo.App., 142 S. W.2d 100, 105 [10–13]; Kirkpatrick v. American Creosoting Co., 225 Mo.App. 774,

37 S.W.2d 996, 1002 [15, 16]; Gilchrist v. Kansas City Rys. Co., Mo., 254 S.W. 161, 163 [2–4]; Garvey v. Ladd, Mo.App., 266 S.W. 727, 731 [6]. The Smart case states, among other things, there was no claim the verdict was excessive and plaintiff's instruction did not mention "convulsions," the fact issue objected to. The Kirkpatrick case states defendant cited no authority and, as we read it, plaintiff's testimony to the effect he had spells of dizziness and faintness was within the charge in the petition. The Gilchrist case involved restlessness at night and inability to sleep or breathe while lying down under a petition charging concussion of the lungs and tearing of the tissues thereof and the breaking of five ribs and the tearing of the muscles, ligaments, etc., attached to the ribs, and that the injuries were permanent. Compare the Garvey case with the later Chawkley case, supra.

■■ Defendant vigorously complains that the damages are excessive. The objectionable testimony introduced a new element for recovery not pleaded and had a tendency to greatly enhance the damages. We have said: "Whenever it is shown that the verdict has likely been induced or the amount affected by erroneous instructions, the improper admission or exclusion of evidence, * * * or other such error, a new trial, and not a remittitur, will be granted." Clark v. Atchison & E. Bridge Co., 333 Mo. 721, 62 S.W.2d 1079, 1082 [12]; Mahanay v. Kansas City Rys. Co., 286 Mo. 601, 228 S. W. 821, 827 [11]; Olian v. Olian, 332 Mo. 689, 59 S.W.2d 673, 678 [11]; Coleman v. Ziegler, Mo.App., 226 S.W.2d 388, 393 [12]; and see Kourik v. English, 340 Mo. 367, 100 S.W.2d 901, 906 [11]. We cannot say, as plaintiff argues, that the testimony was not for the consideration of the jury in arriving at plaintiff's damages. Plaintiff established that his account at the Hillcrest Memorial hospital was $961.50, and that the charges were reasonable for the services rendered. Plaintiff's measure of damages instruction is couched in general terms throughout and, so far as pertinent to the

issue, directed a recovery for "all pain of body and anguish of mind" that the jury found from the evidence plaintiff had and in the future would suffer as a direct result of his injuries, and for "any reasonable doctor and hospital bills" that the jury found from the evidence plaintiff had and in the future would reasonably incur as a direct result of his injuries. We think a defendant should be advised that he might meet, if possible, an issue of the nature involved. The issue falls within the Hall, Connor, Hibbler, Chawkley, Provance and other like cases, supra, and the cause should be remanded.

■ "After Mr. Taylor was placed in the Hillcrest Memorial Hospital on December 17, 1952, Dr. Ungerman diagnosed his condition and continued to treat him, presumably for the injuries sustained on January 1, 1952, until his discharge February 18, 1953. His 'complete and final diagnosis,' according to the 'clinical record' was 'Herniated intervertebral disc, cervical and lumbar.' After relating the history, obtained from Mr. Taylor, Dr. Ungerman, a neuropsychiatrist, described in detail his examination and treatment. In answer to counsel's hypothetical question the doctor expressed the opinion that the fall on January 1, 1952, caused the injuries and disabilities set forth in the question. The doctor's evidence was introduced by deposition and in the course of his cross-examination it was developed that some of Mr. Taylor's complaints were subjective and related to the past, and it was further developed that some of the factors testified to by the doctor were based on past history, particularly as the patient had related it. Upon the trial of the case defense counsel objected to the hearsay and to the past history and at the conclusion of the doctor's testimony the court sustained 'the objection to the answer in the deposition which is based on hearsay.' It is now urged that the court erred in admitting in evidence Dr. Ungerman's opinion and answer to the hypothetical question because, of necessity, the answer was based upon hearsay, the objection having been sustained there was no foundation or basis for the doctor's opinion. Magill v. Boatmen's Bank, 288 Mo. 489, 232 S.W. 448; Berry v. Kansas City Public Service Co., 343 Mo. 474, 121 S.W.2d 825; Gladney v. Mutual Life Ins. Co. of N. Y., Mo.App., 186 S.W.2d 538; Annotations 65 A.L.R. 1217; 98 A.L.R. 1109; 130 A.L.R. 977. Again, it is not necessary to set forth all the evidence and demonstrate the difference in circumstances. As indicated, the doctor did personally examine and treat Mr. Taylor, and all of his knowledge of the patient and his condition was not based upon hearsay but upon observation and analysis of existent symptoms. Corbett v. Terminal R. Ass'n, 336 Mo. 972, 982, 82 S.W.2d 97, 103. Furthermore, the hypothetical question studiously eliminated from the doctor's opinion any consideration of hearsay history, 'irregardless [sic] of any history which may have been told to you.' There was other evidentiary support for the facts hypothesized in the question and the court did not prejudicially err in permitting Dr. Ungerman's answer and opinion. Schwinegruber v. St. Louis Public Service Co., Mo. App., 241 S.W.2d 782, 787; Dillard v. East St. Louis Ry. Co., Mo.App., 150 S.W. 2d 552; Krug v. Mutual Life Ins. Co. of N. Y., 235 Mo.App. 1224, 149 S.W.2d 393."

For the error noted, the judgment is reversed and the cause is remanded.

BARRETT, C., dissents.

STOCKARD, C., concurs.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

EAGER, P. J., and LEEDY, J., concur.

STORCKMAN, J., concurs in result.