## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

## OCTOBER TERM, 1907.

---

*(Continued from Volume 128)*

---

RANDOLPH, Respondent, v. QUINCY, OMAHA & KANSAS CITY RAILROAD COMPANY, Appellant.

**St. Louis Court of Appeals, February 4, 1908.**

1. **CARRIERS OF PASSENGERS: Drover's Pass: Expired Ticket.** Where a drover's pass provided that it was "good only for continuous train passage, commencing on date punched in margin," the holder of such pass was not entitled to ride on it on a date after that punched in the margin.

2. **———: Expired Ticket: Trespasser.** A drover offering to ride on a passenger train, on a pass which had expired according to the provisions printed on it, which he had an opportunity to read and to which his attention was directly called, was not acting in good faith and was a trespasser; the conductor in such case did not violate the provisions of section 1074, Revised Statutes 1899, by putting him off the train at a point not at a usual stopping place nor near a dwelling house.

Appeal from Knox Circuit Court.—*Hon. Chas. D. Stewart,* Judge.

REVERSED.

(1)

Randolph v. Railroad.

*O. D. Jones* and *J. G. Trimble* for appellant.

Plaintiff's instruction number 1 is erroneous. (a) It declares it the legal duty of defendant to return plaintiff from National Stock Yards, Illinois, to Edina, Missouri, without expense because he had shipped a carload of horses from Edina to National Stock Yards. His contract provided: "No return transportation will be given." His pass was a gratuity. (b) Said instruction permits a recovery if plaintiff boarded defendant's train "believing he had a right to ride on the drover's ticket which plaintiff then had. There is no testimony whatever that plaintiff believed he had a right to ride on that pass. Cloud v. Railroad, 14 Mo. App. 144; Woods v. Railroad, 48 Mo. App. 125. (c) Plaintiff's instruction number 2 is erroneous for the reason that it permits a recovery if plaintiff was ejected not at a regular station and not near to a dwellinghouse, ignoring the fact that the statute, section 1070, Revised Statutes 1899, provides for the ejection of a passenger only at such points. Plaintiff was a trespasser. Lillis v. Railroad, 64 Mo. 475; Clements v. Maloney, 55 Mo. 352; James v. Railroad, 107 Mo. 480; Higley v. Gilmer, 3 Mont. 90; Condran v. Railroad, 67 Fed. 522; Holt v. Railroad, 174 Mo. 529.

*F. H. McCullough, Balthrope & Smith* and *Cyrus R. Fowler* for respondent.

The court committed no error in giving instructions, in fact the court went further in the matter than he had a legal right to go, for he instructed the jury that plaintiff had no right to ride on the Drover's ticket in evidence, and that is not a proper interpretation of the law, and gave defendant the best of it. Plaintiff had a right to presume that his ticket was regular and entitled him to passage. Sommerfield v. Transit Co., 108 Mo. App. 718. Appellant's contention that plaintiff was a trespasser is not supported by the evi-

dence in the case, he went on the train thinking that he had a right to ride thereon and thus became a passenger, and defendant's conductor had no right to eject him in the manner stated. Holt v. Railroad, 174 Mo. 524.

BLAND, P. J.—On June 8, 1904, plaintiff was put off of defendant's passenger train at West Quincy on account of his refusal to pay $1.55, the regular fare from Quincy to Edina, Missouri, the latter station being plaintiff's destination. He was also compelled to pay fare from St. Louis to Quincy, having in his possession at the time a drover's ticket over defendant's road from St. Louis to Edina, on which he claimed the right to passage. Plaintiff prayed for both actual and punitive damages. The verdict of the jury was in his favor for the sum of $75, for which amount the court rendered judgment. The appeal is from this judgment.

Briefly stated, the facts are that on December 5, 1904, plaintiff shipped a carload of horses and mules from Edina, Missouri, to the National Stock Yards in East St. Louis, Illinois. The shipment was consigned to the commission firm of Campbell & Reid, which company, on the arrival of the car at East St. Louis, paid the freight ($42.80), unloaded the car and, on December seventh, sold the stock. On the same day plaintiff received from defendant's freight and traffic manager, at St. Louis, Missouri, a drover's pass good for continuous transportation from St. Louis to Edina, Missouri, to begin on December seventh. Plaintiff could have taken a train on the seventh after receiving the pass and arrived at Edina on the following morning; but he was detained in St. Louis on account of the rejection of one of his horses and did not take a train until the morning of the eighth. He presented his ticket to conductor Jamison, who told him the ticket was dated the seventh and he could not ride on it. Plain-

tiff then requested the conductor to let him off, stating that he would go back and get another ticket. The conductor informed plaintiff that he could not stop the train until he got to Elsberry, but that he could pay his fare and get a receipt so that he could get his money back. Plaintiff paid his fare to Quincy and the conductor gave him a receipt for it. At Quincy plaintiff had to take another train on which one Bunnell was conductor. Jamison spoke to Bunnell about plaintiff's ticket before the train left Quincy and informed him plaintiff claimed the right to ride on it. Plaintiff boarded the train at Quincy and demanded of the conductor that he be permitted to ride on his drover's pass. The conductor told him he could not ride on the pass. Plaintiff refused to pay fare and the train was stopped about eight hundred yards from the Quincy depot and plaintiff was forcibly ejected. He immediately re-entered the train, paid his fare to Edina (for which he got a receipt) and was carried to his. destination without further molestation. In regard to his ejection from the train plaintiff, by his deposition taken before the trial, testified: "I told him (the conductor) that I would ride on the ticket or he would put me off, and he said he would put me off. He stopped the train, took hold of me and tried to put me off and could not do it, and said, 'I will put you off,' and went back and got the brakeman and the two pulled me to the back door and shoved me off. After they had shoved me off they started up again and I got on the train again. He stopped the train again and shoved me off again. By that time several came to the door and Mr. Peter Lory said he would pay my fare if he would let me ride, and I told Mr. Lory that I had the money to pay my fare and would do it; so they let me back on the train again." On the trial plaintiff testified that he was pulled out of his seat by the conductor and brakeman, pushed to the platform of the car

and shoved off; that his shoulder was hurt and he was "made sick." There is no evidence that plaintiff was roughly handled, and we do not think the evidence tends to show that more force than was necessary was used to put him off the train.

On the back of plaintiff's drover's pass was the following printed indorsement:

## "THIS TICKET IS ISSUED SUBJECT TO THE FOLLOWING CONTRACT:

1st. It is good only for continuous train passage, commencing on date punched in margin, and no stopover will be allowed at any intermediate point en route unless endorsed by the Freight Traffic Manager, Assistant Freight Traffic Manager or General Freight Agent."

The date punched on the ticket was the seventh and had plaintiff boarded one of defendant's trains on that date he would have been entitled to continuous passage to Edina, irrespective of the date the train might have arrived at that station. The evidence also tends to show that plaintiff might have surrendered his ticket at the office where he got it and received a ticket good for continuous passage beginning on the eighth. The ticket had expired when plaintiff presented it to conductor Jamison and he was not entitled to ride on it. It is claimed, however, that plaintiff, in good faith, believed he had a right to ride on the ticket and that conductor Bunnell violated section 1074, Revised Statutes 1899, in putting him off the train at a point not near a dwelling house, nor at a usual place for the train to stop. The evidence does not warrant the inference that plaintiff boarded the train at Quincy believing, in good faith, that he had a right to ride on his expired drover's pass. In the absence of evidence to the contrary, it will be presumed that plaintiff could read. It was his duty to read the ticket and make himself acquainted

with its terms; but even if he should be excused for failing to read the contract indorsed on the back of the ticket, his own evidence shows his attention was called to the fact that his ticket had expired by conductor Jamison, who notified him that he could not ride on the pass because it had expired, so the conclusion is irresistible that plaintiff knew he was not entitled to ride on his ticket when he boarded the train at Quincy. Nevertheless, with this knowledge, plaintiff got on the train intending not to pay his fare, and his case falls clearly within the ruling of the Supreme Court in the case of Lillis v. Railroad, 64 Mo. 464, "where the holder of a one thousand miles railroad commutation ticket, expressed to be 'good for six months only,' after that period had elapsed having first obtained legal advice that the ticket was good till the thousand miles were traveled, and before the ticket was exhausted, took his seat in the baggage car of a train, refused payment of fare otherwise than by offering his ticket, and was forcibly ejected from the train. Held, that the ticket was void; that the holder was not a passenger but became a trespasser on entering the baggage car and upon his refusal to get off might be ejected, with the use of any force necessary to that end, and at a point contiguous neither to a station nor dwelling house; that the statute (Wagn. Stat. 307, sec. 28) had no application to such a case." [See also Condran v. Railroad, 67 Fed. 522.] Plaintiff, by his own conduct, not only invited but compelled the use of force by the conductor to eject him from the train and as there is no evidence that more force was used than was necessary, we think defendant's demurrer to the evidence at the close of all the evidence should have been given, and reverse the judgment. All concur.