GLASCO ELECTRIC COMPANY, Appellant, v. UNION ELECTRIC LIGHT & POWER COMPANY, a Corporation.—61 S. W. (2d) 955.

Division One, June 12, 1933.*

*NOTE: Opinion filed at October Term, 1932, April 20, 1933; motion for rehearing filed; motion overruled at May Term, June 12, 1933.

*Leahy, Saunders & Walther* and *J. L. London* for appellant.

*Theodore Rassieur, George M. Rassieur* and *John P. McCammon, Jr.,* for respondent.

FERGUSON, C.—Plaintiff brought this action to recover damages, in the sum of $14,364.05, on account of a fire loss, sustained by it, which is alleged to have been caused by the negligence of defendant, Union Electric Light & Power Company. Upon a trial, by jury, in the Circuit Court of the City of St. Louis, the verdict and judgment was for defendant and plaintiff appealed.

The petition charges general negligence, without averments of specific negligence, and plaintiff, appellant here, claims that under the pleading and proof, adduced by it, the case is a proper one for the application of the *res ipsa loquitur* doctrine. Defendant, respondent, insists that conceding the petition does charge general negligence yet plaintiff's "evidence tends to show specific negligence" and for that reason the doctrine of *res ipsa loquitur* does not apply.

Appellant company occupied a building fronting on the west side of North Eleventh Street in the city of St. Louis and was engaged in the business of selling electric light fixtures and appurtenances and other electrical equipment and appliances. A large stock of such merchandise was stored in the basement of the building. Appellant purchased electricity from both the defendant, Union Electric Light & Power Company and the Laclede Gas Light Company. Electricity was transmitted and supplied to the building through four cables entering the basement. Two of these cables were owned and maintained by the Laclede Company and two by defendant Union Electric Company. The cables were carried in iron pipes, referred to as laterals, under ground from the main line cables in Eleventh Street and the service box at that point, for a distance of about forty feet, and through the east wall of the basement. Emerging from the laterals the cables extended, in the open, within the basement and

near the east wall, to fuse boxes and meters. The fuse boxes were owned, maintained and controlled by appellant. The respective iron pipes or laterals and the cables were constructed, installed, and maintained by, and were under the exclusive control of, the Laclede Company and Union Electric Company. The Laclede Company maintained one lateral through which its two cables entered the basement and the Union Electric Company two laterals, each carrying a cable and entering through the east basement wall a few inches north of the Laclede lateral; the openings of the three laterals being within "a radius of about eight inches" so that the four cables as they emerged therefrom were closely grouped. With this preliminary statement undertaking to depict the manner in which these cables carrying electricity into the building were arranged we look to the evidence on the part of plaintiff, appellant. The president of the plaintiff company testified that on September 9, 1924 (at approximately one o'clock P. M.), an employee notified him that there was trouble in the electric wires in the basement; that he proceeded to investigate; that at the place where the cables entered the basement through the east wall there was "sputtering," electricity was "arcing" and an "electrical flame" burning; that the fuse box was intact and the flame was then wholly confined to the point mentioned; that he ran outside the building and gave an alarm by "hollering fire," and that as he "went out of the building the cover of the manhole" of the service box in the street "raised about two feet . . . it appeared to be an explosion." A fire station was located within 150 feet of the building and firemen immediately responded to the alarm. A fire captain testified that he went into the basement and "went within 25 or 30 feet of the east wall;" that an electrical flame was burning "up against the east wall where those wires come through;" that the flame "was about four inches to five inches" and that "there was no fire on either side of it; just the one flame." Another fireman testified that he was standing in front of the fire station when he heard the alarm and at that instant "there was a noise" and the manhole cover raised. As the writer understands, plaintiff claims the damage to its merchandise stored in the basement was largely caused by water poured into the basement by the fire department in extinguishing the fire and to prevent its spread. These facts to the effect that, when first discovered, a small electrical flame confined to the space where the group of cables entered the basement, "a radius of about eight inches," was burning and that electricity was "arcing" and "sputtering" at that point warrants the inference that the fire originated in one or more of the cables. There were facts and circumstances tending to absolve the two Laclede Company cables and one of the cables of the defendant Union Electric Company as being the source of the fire. Plaintiff offered evidence to show the presence immediately after the fire

of an electrical burn inside the iron lateral carrying the other cable of the defendant Union Electric Company. This burn extended for about two inches back into the iron pipe from the end which was about flush with the east basement wall and, as the testimony was, indicated "a short" had occurred in that cable at that point. The cable, in which plaintiff's evidence indicates the fire originated, was made of lead. Certain witnesses testified that if a lead cable such as this was permitted to press against the edge of the iron pipe at the point where it emerged from the pipe without protection, "either a lead shelter or a split wood bushing," under the cable at that point and extending back into the iron pipe the lead cable might in time become worn or cut "through long pressure and vibration" and a short circuit occur. However we discover no positive or direct evidence or circumstantial evidence, unless the mere fact that the circumstances stated warrant an inference that a short did occur near the point at which the lead cable emerged from the pipe be so considered, that the cable in question was not properly protected. Defendant undertook to show that the fire might have originated in the metal fuse box to which its cables were connected and which fuse box, as we have mentioned, was owned and maintained by, and wholly under the control of, plaintiff and that a fire could upon certain conditions and happenings result from the use of open or string fuses in this box instead of enclosed or cartridge fuses such as proper care and caution, required in a fuse box of this type. This fuse box was located about three feet from the point where the cable emerged from the lateral. As a basis for its theory defendant offered testimony of an inspector of the Laclede Company who had visited the premises at about 12:30 P. M., some thirty minutes before the fire was discovered. He testified that, at that time, the door of this fuse cabinet or box into which the Union Electric cables led was open and "it appeared as though some one was probably working on the elevator and was having trouble blowing fuses and instead of putting in approved fuses was using the plain string fuse" and "this is a very dangerous thing to do in" a fuse cabinet of this type.

▮ If plaintiff's evidence is accepted and the circumstances thereby developed accorded the most favorable inferences a jury would be warranted in finding that the fire was caused by "a short" occurring in the particular cable which plaintiff's evidence tended to identify. This cable was enclosed in and passed through the iron pipe or lateral, under ground, into the basement and extended for a distance of about three feet inside the basement to plaintiff's fuse box. It was constructed, installed and owned, by defendant, was under defendant's exclusive control and management and defendant was under a continuing duty to exercise proper care in the inspection, supervision and maintenance of its cables, wires, laterals, appurtenances and appliances.

The *res ipsa loquitur* doctrine finds frequent application in cases against electric companies and when in such case the petition charges general negligence only and the facts and circumstances in plaintiff's evidence show that, without fault on the part of plaintiff, the injury or damage complained of was caused by the escape of electricity from wires and appliances under the exclusive control and management of such company and the occurrence is such as does not ordinarily happen if those having such control and management use proper care, a presumption or inference of negligence, or want of proper care, on the part of defendant electric company arises and the weight of the inference as well as the weight of such explanation, if any, the defendant makes, is for the jury. ■ When, under the circumstances of the particular case, the doctrine of *res ipsa loquitur* is applicable it constitutes an exception or qualification of the general rule that negligence is not to be presumed but must be affirmatively proven and operates as a substitute for specific proof of negligence or proof of specific negligence so as to make a prima facie case, which if unexplained, carries the question of negligence to the jury and is sufficient to warrant and sustain a finding of negligence on the part of defendant. [20 C. J. pp. 380-383; 9 R. C. L. p. 1221; 45 C. J. pp. 1198, 1200, 1216.]

■ The petition herein did not allege that the fire was caused by any one or more specific acts of negligence. Had the petition alleged specific acts of negligence the *res ipsa loquitur* doctrine could not have been invoked but plaintiff would have been required to prove, "and recover, if at all, upon the negligent acts pleaded." [Price v. Metropolitan Street Railway Co., 220 Mo. 435, 119 S. W. 932.] On the other hand even though the petition, as in the instant case, charges general negligence only yet if plaintiff's proof clearly shows the precise or specific negligent acts or omissions on the part of defendant which caused the injury "there is no occasion or room for the application of a presumption." [Conduitt v. Trenton Gas & Electric Co., 326 Mo. 133, 31 S. W. (2d) 21.] "The real cause being shown, there is no occasion to inquire as to what the presumption would have been if it had not been shown." [Price v. Metropolitan Street Railway Co., supra.] Defendant, respondent, in this case takes the position, and evidently the trial court held the same view of the case, that, plaintiff "proved" it's "case too well" (Conduitt v. Trenton Gas and Electric Co., supra) and was thereby precluded from reliance upon the doctrine of presumptive negligence.

■ The sole basis for defendant's contention is that certain expert witnesses, offered by plaintiff, testified that if the lead cable was not properly protected at the point where it emerged from and rested upon the edge of the iron pipe and for a distance inside the pipe the cable might in time become worn or cut so as to cause "a short" to occur. As said above we find no direct or positive evidence that the

cable was not properly installed, constructed, protected and maintained. We do not think that plaintiff's proof can be said to clearly point out or establish any precise or specific act or omission or want of proper care on the part of defendant on account of which electricity escaped from or "a short" occurred in its cable causing the electrical fire described and shown, at least circumstantially, by plaintiff's evidence to have originated in defendant's cable. "Plaintiff is not deprived of the benefit of the doctrine (*res ipsa loquitur*) from the mere introduction of evidence which does not clearly establish the facts or leaves the matter doubtful for if the case is a proper one for the application of the doctrine, and the pleading is such that it may be invoked, an unsuccessful attempt on the part of plaintiff to show the specific negligent act which caused the injury does not weaken or displace the presumption of negligence on the part of defendant arising from the facts of the case by virtue of the doctrine of *res ipsa loquitur*." [45 C. J. p. 1207.] Numerous authorities are listed in Conduitt v. Trenton Gas and Electric Co., 326 Mo. 133, 143, 31 S. W. (2d) 21, 25, holding that though plaintiff introduced evidence tending to show specific acts or omissions on part of defendant as the cause of the injury "the benefit of the rule *res ipsa loquitur* will not be waived or lost if by this evidence the cause is still left in doubt or is not clearly shown." The nature and extent of plaintiff's evidence was not such as to preclude it from invoking and relying upon the presumption or inference of negligence under the *res ipsa loquitur* rule.

The circumstances shown by plaintiff's proof point so persuasively to negligence on the part of defendant as to warrant such a finding by the jury, unless satisfactorily explained, and call upon defendant to make such explanation. It was within the power of defendant at all times to show whether it exercised proper care in the construction and subsequent supervision and maintenance of its laterals, cables and wires and the fact that electricity is a subtle and inherently dangerous agency "lends force to the strict application" of the *res ipsa loquitur* doctrine in electrical cases. [9 R. C. L. p. 1221.]

With the view we have of this case we think the trial court erred in giving instruction numbered 4, offered by defendant, as follows: ·

"The court instructs the jury that even though you find and believe from the evidence that plaintiff suffered damage by reason of a fire caused by the emission or escape of electric current, sparks, fire or flame from electrical apparatus owned and exclusively controlled and maintained by defendant, yet those facts alone are not sufficient to warrant you in returning a verdict for plaintiff in this case. Unless you also find and believe from the evidence that defendant was guilty of negligence, and that such negligence was the

proximate cause of said fire, your verdict must be in favor of the defendant.''

The first part of the instruction in keeping with defendant's contention that the *res ipsa loquitur* doctrine does not apply in this case wholly deprives plaintiff of the benefit thereof. It tells the jury that the showing made by plaintiff, which we have held suffices to make the doctrine applicable as a substitute for specific proof of negligence thereby raising a presumption or inference of negligence on the part of defendant, is ''not sufficient to warrant a verdict for plaintiff.'' While the plaintiff must show by the greater weight of the evidence that the injury complained of resulted from defendant's negligence (McCloskey v. Koplar, 329 Mo. 527, 46 S. W. (2d) 557) the second part of the instruction, read in connection with that which precedes impliedly, if not directly, tells the jury that the facts predicated in the first part of the instruction are not sufficient to warrant a finding of negligence on the part of defendant and that unless such negligence is shown by other, further or direct proof thereof they cannot find for plaintiff. But as heretofore, in substance, stated under the *res ipsa loquitur* rule, such facts alone afford reasonable evidence of negligence or want of proper care on the part of defendant and in the absence of satisfactory explanation by defendant, are sufficient to warrant a finding of negligence and support a recovery by plaintiff based thereon.

Upon direct examination the president of plaintiff company testified that the damage sustained was approximately $14,000. In the cross-examination, plaintiff's objection to the inquiry being overruled, he testified that insurance companies had paid, and his company had accepted, the sum of $7900 ''as settlement in full'' of the loss and damage. In permitting this inquiry the court stated it was admitted by way of impeachment and as affecting the weight and credibility of the witness's testimony concerning the damage sustained. At plaintiff's request the court gave an instruction that if the jury found ''defendant liable to plaintiff for damages'' they should allow plaintiff damages ''in accordance with the instruction'' given on the measure of damages and same should not be diminished by the amount of insurance money received by plaintiff. Appellant however complains that when it was sought upon redirect examination to have the witness explain the settlement made with the insurance companies and develop that while same was, by way of compromise, a settlement in full with the insurance companies it was not a payment in full of the loss, plaintiff's inquiry for such purpose was, upon defendant's objections, unduly and improperly restricted and limited by the trial court. As the case is to be remanded it would serve no purpose to here discuss the matters to which, in support of this contention, appellant directs our attention. On the retrial our general statement of the rule, in such situation, made in City of

St. Louis v. Worthington, 331 Mo. 182, 52 S. W. (2d) 1003, 1009, might well be applied: "Upon cross-examination the witness may be asked any questions which tend to impeach, rebut, contradict, or modify his testimony on direct examination. After a witness has been cross-examined, the party calling him may by redirect examination afford the witness opportunity to make full explanation of the matters made the subject of cross-examination so as to rebut the discrediting effect of his testimony on cross-examination and correct any wrong impression which may have been created."

■ Appellant also complains of the action of the trial court in permitting defendant's counsel, over its objection, to inquire of the members of the jury panel, on voir dire examination, as follows: "I will ask if any man on this panel is an officer or employee of either of these companies," naming several fire insurance companies. Preceding this inquiry, and out of the presence and hearing of the jury panel, counsel for defendants had inquired of counsel for plaintiff if any insurance companies were interested in the prosecution of the action and requested that, if so, the names of such companies be stated. Plaintiff's counsel replied, "I don't know the names . . . and I decline to give any names." One of defendant's attorneys then testified that theretofore plaintiff's counsel had, in response to inquiry, advised him that the insurance companies listed in the above question were interested in the prosecution of the action. The deposition of the president of plaintiff company that the named insurance companies were prosecuting the action and would benefit from any recovery had was offered by defendants. Upon this showing the trial court, and we think properly, permitted defendant's counsel to make the inquiry noted.

A further complaint urged by appellant relates to an instruction given at defendant's request as to the weight and credit to be accorded the evidence of defendant's absent witness, Stanton, "contained in and read to" the jury "from the affidavit in support of defendant's application for a continuance." Pursuant to the provisions and conditions of Section 940, Revised Statutes 1929, the facts stated in such affidavit were read to the jury as the evidence of such absent witness. Appellant in rebuttal read parts of the deposition of the witness and argues that since the instruction referred only to the affidavit and made no reference to the deposition it unduly emphasizes the affidavit, constitutes a comment by the court and makes a prejudicial discrimination. Reading the affidavit and deposition appearing in the record it seems doubtful that the instruction could have operated to plaintiff's prejudice. But if, in the present form, the instruction be considered prejudicial as the case is to be retried it seems unlikely that the same situation would occur on a retrial and if it should we apprehend that the trial court, before giving same, will see that the instruction is so framed as to

avoid the criticism which appellant makes of the present instruction.

The error noted, whereby plaintiff was denied the benefit of the *res ipsa loquitur* doctrine and the right to rely thereon, requires that the judgment be reversed and the cause remanded. It is so ordered. *Sturgis* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All of the judges concur.