ANNA NAY BERRY (BEASLEY), by Her Next Friend, M. T. NAY, v. KANSAS CITY PUBLIC SERVICE COMPANY, a Corporation, Appellant. —121 S. W. (2d) 825.

Division One, November 19, 1938.

*Charles L. Carr* and *Watson, Ess, Groner, Barnett & Whittaker* for appellant.

476

*Jenkins & Vance* for respondent.

LUCAS, J.—An action for personal injuries. Plaintiff, a young lady eighteen years of age at the time, was injured on October 22, 1933. She was a passenger on a street car of the defendant, Kansas City Public Service Company. The accident occurred in the Sheffield district in the east part of Kansas City, Missouri. The street car in which plaintiff was riding was traveling on the north track of the defendant and it crossed the line of railroad of the St. Louis-San Francisco Railway Company at a point where the two tracks crossed at right angles; the railroad track running practically north and south and the street car track running practically east and west. This case was in this court before against both the defendant street car company and the trustees of the St. Louis-San Francisco Railway Company. The jury in the first trial returned a verdict of $20,-000 in behalf of plaintiff and against both defendants. On the first appeal the judgment of the trial court was reversed and the cause remanded in 341 Mo. 658, 108 S. W. (2d) 98. The case was tried both times in the trial court in Johnson County, Missouri.

After the first appeal in this case the plaintiff settled her cause of action against the trustees of the railroad company for the sum of $4000 and as to that defendant in the original case plaintiff dismissed her cause of action and in the second trial the case proceeded against the Kansas City Public Service Company alone. At the second trial a verdict for $12,000 was returned in favor of plaintiff and against the street car company. In due time and in a regular manner the street car company has perfected its appeal to this court from the judgment on that verdict.

There was sufficient evidence to take the case to the jury and we are not called upon to rule upon a demurrer to the evidence in this case. The pertinent facts to this case are as follows:

Plaintiff was employed in Kansas City and on the night of the accident she had gone to visit her sister who lived in the eastern part of Kansas City and late at night plaintiff together with her relative, Ruby Snow, boarded a west-bound street car of the defendant at Fairmount Station for the purpose of returning to Kansas City. As the street car proceeded toward Kansas City it had to cross three tracks of the Missouri Pacific Railway Company and 187 feet west of the Missouri Pacific tracks was a track of railroad belonging to the Frisco which the street car also had to cross. During the daytime a watchman was kept at the Frisco and street car crossing but at

night no watchman was kept there and the accident in which plaintiff was injured occurred at one o'clock in the morning of October 22, 1933. The street car in which plaintiff was riding was struck by the engine of a Frisco train which train was traveling north at the time of the collision and which train consisted of twenty-two cars. The street car was hit by the engine of the Frisco and carried a distance of several feet before it was forced from the track and practically demolished. Plaintiff was severely hurt as a result of this collision. Plaintiff went to trial in the second case on the same amended petition that the case was tried on at the first trial and this petition charges this defendant with general negligence and failure to exercise the highest degree of care. No specific allegations of negligence were charged against the defendant in this petition. The amended answer of the defendant street car company was a general denial coupled with the plea that plaintiff had compromised and settled her cause of action by accepting $4000 from the trustees of the St. Louis-San Francisco Railway Company. The reply of the plaintiff to this amended answer denied that plaintiff had made a complete settlement of her cause of action but alleged that she had made a partial compromise as to the trustees of the Frisco Railroad Company but that she had not settled her lawsuit by said partial compromise and that she had retained her cause of action against the Kansas City Public Service Company. Additional facts and allegations contained in the first trial at which time the Frisco Railroad Company was a co-defendant with the present defendant may be found in the report of the case when it was here before and we will not lengthen this opinion by repeating those facts except to say that there was evidence at both trials that the headlight on the Frisco engine was not burning at the time or immediately prior to the time of the collision; that neither the bell nor the whistle on the Frisco engine sounded as the engine approached the crossing and that the speed of the Frisco train was not slackened as it approached the crossing. Of course the Public Service Company blamed the Frisco Railway Company for the collision and offered evidence to the effect that the street car company was not at fault, but the plaintiff offered evidence tending to establish negligence on the part of the street car company in the following respect, to-wit: Section 4896, Revised Statutes 1929, requires the street railway company or corporations operating street railways which cross tracks of a railroad company to bring its street cars to a full stop at least ten and not more than twenty feet before reaching the tracks of the railroad company. Said section further requires the conductor or other employee of the street railway company to go forward to the tracks of such railroad company (after stopping the street car) for the purpose of ascertaining whether a train is approaching such crossing. The Public Service Com-

pany had a large signboard at the right or north of its westbound track and about twenty-two feet east of the Frisco track upon which was painted in large lettering, ''Stop—Railroad Crossing—Be Sure You Have Clear Track Before Crossing.'' This warning was placed there by the street car company for the purpose of warning its operators of street cars of the danger at this crossing. The street car in which plaintiff was riding was operated by one man and the headlight of the street car was burning. The plaintiff produced several witnesses who testified that the operator of the street car in which plaintiff was riding did not stop the street car at any point immediately east of the Frisco Railroad track and the same witnesses testified that the operator of the street car did not leave the car at any time for the purpose of seeing whether or not a Frisco train was approaching. There was no evidence that any watchman or other employee of the street car company or anyone else at any time signaled or notified the operator of the street car in question to proceed across the railroad track without stopping his street car. All of plaintiff's evidence was to the effect that the operator of the street car proceeded to cross the Frisco track without slackening his speed, without stopping his car and without inspecting the railroad track for the approach of a train. On the other hand, the evidence offered by defendant was to the effect that the street car was brought to a complete stop at some distance east of the Frisco Railroad track and that the operator of the street car looked to see whether a train was approaching the crossing and that he saw no train coming and that he started the street car and proceeded on his way without getting out of his street car and without going to the crossing of the two tracks to see whether a train was coming, all of which was required by the statute mentioned above. The conductor testified that after he stopped his street car that he could see up and down the railroad track as plainly as if he had gone to the crossing itself. He testified that he saw no train coming, that he heard no noise of a train, that he heard no whistle sound or bell ring and that he then started across and that after the front end of his street car had crossed the Frisco track that a Frisco engine hit the car on the south side and that he did not know of the approach of the train until his street car was hit.

As stated above plaintiff was severely injured and rendered unconscious and was taken to the hospital where she received treatment for some weeks. The evidence showed that this collision in which plaintiff was hurt occurred early Sunday morning about one o'clock, on October 22, 1933, and that twenty-eight days prior thereto, towit: September 24, 1933, plaintiff was injured by jumping from an automobile which was moving at the rate of fifty or sixty miles an hour and that as a result of her jumping from this moving automobile

she lost consciousness for about an hour and a half and received a cut in the back of her head which required thirteen stitches and that she received other bruises upon her body and was in the hospital for these injuries for ten days and did not go back to work until two days before the collision of the street car and the locomotive. Plaintiff had settled her cause of action arising out of her automobile difficulty. Appellant brings this case here on five assignments which are as follows:

I. The trial court erred in giving plaintiff's Instruction "C."

II. The trial court erred in permitting Dr. Gibson to testify as an expert because he based his opinion partly upon the history of plaintiff's condition which history he obtained from the plaintiff.

III. The trial court erred in refusing to give Instruction No. 8 as offered by defendant.

IV. The court erred in refusing to give Instruction No. 9 as offered by the defendant.

V. The verdict was excessive.

We shall take these assignments up in the same order as appellant has presented them:

I. The court at the request of the plaintiff gave to the jury instructions "B" and "C" which are as follows:

"B. The court instructs the jury that where a street railway company operates its street cars across the tracks of a railroad company, the law of this State provides as follows: (1) that it shall be the duty of such street railway company to bring its cars to a full stop at least ten feet and not more than twenty feet before reaching the tracks of such railroad company; (2) that it shall be the duty of the conductor or some other employee of such street railway company to go forward to the tracks of such railroad company, for the purpose of ascertaining whether a railroad train is approaching such crossing, and the failure, if any, to perform either or both of these duties would be negligence on the part of such street railway company.

"Now, therefore, if you believe and find from the evidence that the employee in charge of the street car in question failed to comply with the law in either or both of the above-mentioned particulars—that is to say, if you believe and find from the evidence that the street car in question was not brought to a full stop at least ten feet and not more than twenty feet before reaching the railroad tracks, or that neither the conductor nor any other employee of the street railway company went forward to the tracks of the railroad company

for the purpose of ascertaining if a train was approaching the crossing, and as a result of such failure in either or both of such particulars the collision resulted, if so, between the Frisco engine and the said street car, if so, and that plaintiff was injured, if so, then your verdict shall be for the plaintiff, and against the defendant, the Kansas City Public Service Company.''

''C. The court instructs the jury that if you find and believe from the evidence in this case that on or about the 22nd day of October, 1933, defendant Kansas City Public Service Company was engaged in carrying passengers for hire, and if you further find that on said date plaintiff boarded one of the street cars at or near Fairmount Station, Jackson County, Missouri, westward bound, to be carried to a point in Kansas City, Missouri, and that she paid her fare and became a passenger thereon, then it was the duty of the Kansas City Public Service Company to exercise the highest degree of care in the operation of said street car to transport plaintiff safely to her destination, and such high degree of care must be the highest care practicable among prudent, skillful, and experienced men in the same kind of business, and if you find from the evidence in this case, that the said defendant Kansas City Public Service Company, its agents, servants and employees, in charge of and operating said street car, failed to exercise the highest degree of care in the operation of said street car, and carelessly and negligently caused and permitted said street car to come into collision with the engine and train of James M. Kurn, and John G. Lonsdale, Trustees for St. Louis-San Francisco Railway Company, mentioned in evidence, and injured plaintiff without fault or negligence on her part, then the Kansas City Public Service Company was guilty of negligence and is responsible to the plaintiff for damages resulting to her from such negligence, if any, and you will find the issues for the plaintiff and against the defendant Kansas City Public Service Company.''

Appellant contends that Instruction ''C'' should not have been given to the jury because plaintiff elected to submit her case to the jury on the ground of specific negligence and had proved specific negligence. Instruction ''B'' quoted above had directed a verdict for the plaintiff upon the theory of specific negligence and the evidence adduced by plaintiff in the case was sufficient to justify such a submission and instruction, and that therefore Instruction ''C'' which was a submission of the case to the jury on general negligence had no place in the case and should not have been given. A reading of these two instructions clearly shows that plaintiff did submit her case to the jury on specific negligence under Instruction ''B'' and then submitted her case to the jury on general negligence under Instruction ''C.'' These two instructions cannot stand together. Instruction ''C'' is in no way dependent upon Instruction ''B.'' They

are as different and contrary in theory as it is possible to draw instructions. The petition charged general negligence and not specific negligence, but the evidence of the plaintiff tended to show specifically that the negligence of the defendant which negligence caused the collision, was, that the defendant violated Section 4896, Revised Statutes 1929, and that the only negligence that the defendant was guilty of, was that the defendant ran its street car into this crossing immediately in front of an approaching train without having stopped the street car before entering the crossing and without having performed the required duty of going to the crossing and looking for an approaching train. Therefore, when plaintiff proved the specific negligence on the part of the defendant that caused the collision (assuming the jury believed this evidence) and plaintiff went further and submitted her case under Instruction "B" on this very theory, then there is no place in the case for the submission of the question of general negligence which theory was contained in Instruction "C." [Conduitt v. Trenton Gas & Elec. Co., 326 Mo. 133, 31 S. W. (2d) 21, l. c. 25; Sanders v. City of Carthage, 330 Mo. 844, 51 S. W. (2d) 529, l. c. 531; Glasco Elec. Co. v. Union Elec. L. & P. Co., 332 Mo. 1079, 61 S. W. (2d) 955, l. c. 958; Powell v. St. Joseph Ry., L., H. & P. Co., 336 Mo. 1016, 81 S. W. (2d) 957, l. c. 960; Williams v. St. Louis, etc., Railroad Co., 337 Mo. 667, 85 S. W. (2d) 624, l. c. 636.]

Instruction "C" is in the nature of a *res ipsa loquitur* instruction. There was no real dispute about how the accident happened or what caused it, consequently, there is no room for presumption under this record. Instruction "C" submitted a case to the jury that was properly pleaded but not proven by any evidence other than the evidence that proved the theory of the case as contained in Instruction "B." This court in the well-reasoned opinion of the Conduitt case, 326 Mo. 133, 31 S. W. (2d) 21, l. c. 25 (5) held:

"The doctrine of these authorities is that, even though the plaintiff introduce evidence tending to show specifically the cause of the accident, the benefit of the rule *res ipsa loquitur* will not be waived or lost if by this evidence the cause is still left in doubt or is not clearly shown; but, where the precise cause is shown, there is no occasion or room for the application of a presumption. The plaintiff is bound by his evidence in a *res ipsa* case just as he would be in any ordinary negligence action and cannot in effect say to the jury, 'I have shown you exactly how the accident occurred but you are, nevertheless, still at liberty to speculate and presume it may have happened some other way.'"

Again this court in Sanders v. City of Carthage, 330 Mo. 844, 51 S. W. (2d) 529, l. c. 531, held:

"Neither is he permitted, even though he has alleged general negligence, if his proof shows specifically the cause, to submit the case to the jury upon instructions on the theory of *res ipsa loquitur.*"

When a plaintiff knows the cause of the accident and shows that cause to the jury, then the jury must find that the injury was caused in that certain way before it can return a verdict for the plaintiff, and the jury cannot be permitted to speculate on whether the injury was caused in some other way. The same rule was followed in the Glasco case, 332 Mo. 1079, 61 S. W. (2d) 955, 1. c. 958. In the more recent case of Powell v. St. Joseph Ry., L., H. & P. Co., 336 Mo. 1016, 81 S. W. (2d) 957, 1. c. 960, this court correctly stated the law of this State as follows:

"Thus, the *res ipsa loquitur* rule aids the injured party who does not know and therefore cannot plead or adduce proof showing the specific cause of or how the event which resulted in his injury occurred, but if he knows how it came to happen, and just what caused it, and either specifically pleads or proves the cause, there is neither room nor necessity for the presumption or inference which the rule affords. [Smith v. Creve Coeur Drayage & Motor-Bus Company, 220 Mo. App. 1122, 296 S. W. 457.] However, when, as in the instant case, the plaintiff pleads general negligence and by the pleading invokes the aid of the *res ipsa loquitur* doctrine, he does not lose or waive the benefit thereof, and the right to rely thereon in the submission of the case to the jury, by introducing evidence tending to show specifically the cause of the accident if by the evidence the cause is still left and remains in doubt or is not clearly shown, but where the real or precise cause is definitely shown, and is not left in doubt, 'there is no occasion or room for the' presumption or inference which the *res ipsa* rule affords."

In the case under consideration the plaintiff's evidence clearly showed to the jury what negligence on the part of the defendant caused the injury to plaintiff and left no doubt about the cause of the collision and under that state of record there was no occasion for the presumption or inference which the *res ipsa* rule affords. Therefore, the giving of Instruction "C" in this case was erroneous.

II. Appellant next complains about the testimony given by Dr. Gibson who was called as a witness by the plaintiff and testified as an expert witness and in giving his testimony stated that his interpretation of the condition of the plaintiff at the time that he made the examination depended on the history of the case and on his own examination. The Doctor further said: "The history as I obtained it indicated to me that this patient had received a spinal concussion at the time of the injury and the history indicated this bladder disturbance had been continuous from that time. I was

inclined to feel for that reason, that the bladder disturbance was connected up directly with the injury." The Doctor further stated that he had been told that the plaintiff had jumped from a speeding automobile and struck the concrete pavement and was knocked unconscious the latter part of September, preceding the collision between the street car and the locomotive. The Doctor further stated that he did not know and had not been told about the consequences following the automobile injury in the following particulars: He did not know plaintiff had remained in the hospital for ten days; he had not examined hospital records of the plaintiff's visit to the hospital at that time; he did not know that her reflexes were sluggish; he did not know that plaintiff had complained of pains in her abdomen; he did not know that plaintiff suffered paralysis of the bladder; he did not know that it had been necessary for plaintiff to use a catheter. After Dr. Gibson testified that he had not been informed of these details and consequences which followed the automobile injury twenty-eight days prior to the collision in question, yet, the Doctor testified: "The opinion is based on that history I obtained and upon what I thought was a complete physical examination at the time I saw her in June, 1934." He further stated, "The history I obtained *from the patient and my understanding* was that she had recovered from that, and that she was well at the time of the second injury." Again the Doctor was asked a question, "Could you tell from your examination in June, 1934, the result of her concussion in September, 1933, or October, 1933? A. We are dealing with two types of concussion here. If she had a concussion in September, 1933, it was from the blow on the head and she had a brain concussion. Q. How do you know that, Doctor? A. I am assuming from what I have been told, she was unconscious for some time." Again the Doctor was asked, "Doctor, that brings us right back to this question: Do you know whether or not as the result of that automobile collision she had a spinal concussion? A. No, sir, I don't know. Q. If she did have, could the condition you have testified about have been attributable to that, or could it not? A. I have to depend on what history I could get from her. She told me before this happened she was not paralyzed and there was no wasting away and she wasn't without sensation and she didn't have severe pains in her back."

We have quoted from the Doctor's testimony, and from a careful reading of his entire testimony we find and hold that Dr. Gibson did base his opinion as an expert upon the history of the physical condition of the plaintiff which history was obtained from the plaintiff and was hearsay and was not competent evidence upon which the Doctor could base an opinion. It must be remembered that this plaintiff had been severely injured when she jumped from a fast moving

486

automobile twenty-eight days prior to the receiving of the injury for which she is suing the defendant. The injuries that she received in the automobile accident had prevented her from returning to her work earlier than two days prior to the injury she received in the train collision. Therefore, in order to give the jury proper evidence from which the jury could intelligently determine the extent and seriousness of the injuries received by plaintiff in the collision, it would be necessary for an expert witness to base his opinion upon facts and examinations that did not violate the rules of evidence. Here Dr. Gibson was informing the jury on a very technical and close question and he was basing his opinion upon information and statements that the plaintiff herself had confided to the Doctor. The plaintiff had not confined her statements to her present physical complaints and ailments as of the time that Dr. Gibson was examining her but she informed him of her recovery from a previous injury and yet she had not revealed to him the physical injuries and complaints which she suffered from the automobile injury as is easily determined from the testimony of Dr. Gibson, a part of which is above set out. As we understand the rule in this State the doctor can only rely on the statements of the patient when the statements pertain to present symptoms, pains and disorders. The doctor must not accept statements of the patient for past ailments. In the case of McGill v. Boatmen's Bank, 288 Mo. 489, 1. c. 497, 232 S. W. 448, 1. c. 450, this rule is laid down:

"Defendant cites as authority for his contention the case of Gibler v. Railroad, 129 Mo. App. 1. c. 103, which is we think one of the leading cases on the question, from which we quote as follows:

"'The rule of law involved in the exception to this expert testimony is examined with discrimination and care in that well-tested repository of sound law, Greenleaf on Evidence, vol. 1, sec. 162, of the sixteenth edition. The rule stated in this treatise and accepted by most, if not all, courts, is that a physician may give in evidence his expert opinion of the condition of a patient, founded on his observation or on the patient's statement of present subjective symptoms, or both, and in giving his opinion the physician may testify not only of what he observed, but what the patient told him about present symptoms.'"

We think that the statements of the plaintiff with respect to her past physical condition were merely hearsay and should not have been considered by Dr. Gibson in expressing his opinion as a witness as to her physical condition at the time he examined her. We think that sound reasoning requires us to say that the reception of Dr. Gibson's testimony, insofar as it pertained to his opinion, in this case by the trial court was erroneous and constitutes reversible error.

III.  Appellant next complains about the trial court refusing to give Instruction No. 8 which instruction is as follows:

"The court instructs the jury that the plaintiff in this case is not entitled to recover on account of an operation involving the removing of her appendix, of a cyst on her Fallopian tubes, nor on account of the conditions making such operation necessary."

It is true that this court on the former appeal of this case held that the evidence before the trial court at the first trial was insufficient to justify the submission to the jury the right of the plaintiff to recover damages from this defendant for the operation in which the doctors removed her ovary, appendix and Fallopian tubes. However, at the second trial the plaintiff attempted to supply this lack of evidence by introducing additional medical testimony. For instance, at the first trial the doctor, namely, Dr. Green, who performed the operation on plaintiff did not testify, but at the second trial Dr. Green was produced as a witness for the plaintiff and testified at length and in much detail about the operation which he performed on plaintiff and gave testimony to the effect that the operation was made necessary because of the injuries that the plaintiff received in the collision upon which this suit is based. Again Dr. Korth, who treated the plaintiff after the automobile accident testified that the injuries received by plaintiff in that accident were not such injuries as would have necessitated the operation which Dr. Green performed, and consequently, at the second trial plaintiff did produce evidence which, if the jury believed, was sufficient to support a verdict for plaintiff for the loss of parts of her internal organs. In ruling upon the correctness of the trial court to give Instruction No. 8 we must follow the same rule of law that is followed by this court when ruling upon the sustaining of or failure to sustain, a demurrer to the evidence, that is, if there is any competent evidence from which the jury could reasonably conclude that a plaintiff is entitled to recover from a defendant, then a court must submit the case to the jury and a failure on the part of the court to submit such a case to the jury would be error; consequently, in this case there is competent evidence from which a jury might reasonably find that the operation and loss of some of plaintiff's internal organs was made necessary by, and caused from, her injuries suffered from the collision of the street car and the locomotive. The jury had before it a large quantity of evidence on this point and we cannot, as a matter of law, override or nullify the legal right of a jury to pass upon the evidence in the case. To do such in this case would be depriving the jury of its part in the trial of this case. It is true that the two accidents in which plaintiff was involved occurred within a short interval and in both accidents plaintiff suffered severe injuries but we believe that the jury, and not the judge, is the proper branch of the

court to decide under the evidence in this case whether or not the operation was made necessary from the injuries received by the plaintiff in the collision. We are not overlooking the fact that the plaintiff is required by law to prove her case by competent evidence, neither are we overlooking the fact that under our law the jury is permitted to pass upon the evidence in the case when the evidence, together with all reasonable inferences therefrom, is sufficient to support a verdict. For these reasons we hold that the trial court properly refused Instruction No. 8 as offered by the defendant.

IV. Appellant next complains about the refusal of the trial court to give Instruction No. 9 as tendered by the defendant which instruction is as follows:

"The court instructs the jury that in the event you find the issues in favor of the plaintiff in this case, that in assessing the damages you shall deduct the sum of $4,000.00 from the amount you may find is reasonable compensation for the injuries sustained by plaintiff *as a direct result of the negligence (if any) of the defendant.*"

The court gave Instruction No. 10 which is identical with Instruction No. 9 except Instruction No. 10 omitted that part of Instruction No. 9 which we have italicized.

We are unable to follow appellant's reasoning on this point. We hold that Instruction No. 9 as offered by the defendant is not a correct statement of the law and therefore, the trial court was correct in refusing to give said Instruction No. 9 to the jury. Plaintiff had made a partial compromise and settlement with the railroad company for her injuries, this she had a legal right to do under the law in this State. Joint or concurrent tort-feasors are severally, as well as jointly, answerable to the injured party for the full amount of the injuries. The injured party may sue all or any of the joint or concurrent tort-feasors and obtain a judgment against all or any of them. The injured is entitled to but one satisfaction for the injuries inflicted and that satisfaction may come from all or any of the joint tort-feasors. When an injured plaintiff compromises or settles with one of the joint tort-feasors for a portion of the injuries, the injured person still retains her cause for action against the other tort-feasors and recovery may be had for the balance of the injury. [Clifton v. Caraker, 50 S. W. (2d) 758.] Unless the damage caused by each of such concurrent or joint tort-feasors is clearly separable, permitting the distinct assignment of responsibility to each, each is liable for the entire damage. The degree of culpability is immaterial. [Carr v. St. Louis Auto Supply Co., 293 Mo. 562, 239 S. W. 827; Bradley v. Becker, 321 Mo. 405, 11 S. W. (2d) 8.]

Since defendant street car company was responsible to the plaintiff for all of her injuries received in the collision (assuming said defendant was negligent), it would have been improper for the trial

court to have told the jury that the jury should deduct the sum of $4000 (which had been received in a partial settlement from the railroad company) from the amount that the jury might find to be reasonable compensation for the injuries sustained by the plaintiff as a direct result of the negligence of the defendant, because the jury was entitled to return a verdict for reasonable compensation for the injuries which the jury found had been received by the plaintiff in the collision, regardless of whose negligence caused the injury; that is, it made no difference whether the negligence of the railroad company or the street car company caused the injury to plaintiff and it was wholly beyond the province or duty of the jury to determine what part of plaintiff's injury was due to the negligence of the defendant street car company, just as it was beyond the province or duty of the jury to try to determine what part of the injury suffered by plaintiff was due to the negligence of the railroad company. The instruction as offered was erroneous in requesting the jury to divide the responsibility of these joint tort-feasors, and the instruction as tendered required not only an impossible finding by the jury but a finding that is wholly unrecognized under the law of this State.

There was no evidence before the jury which in any way attempted to measure or determine the amount of money that either the street car company or the railroad company severally or jointly might owe the plaintiff for her injuries. The amount due plaintiff, if anything, from either or both of these tort-feasors was to be determined by a jury from the facts in evidence. The jury had been informed that plaintiff had received $4000 from the trustees of the railroad company. It was proper for the jury to have that information. Since the jury had that information before it, it would be presumptious on our part for us to assume that the jury would not, and did not, take that information with them into the jury room where the jury deliberated on its verdict and we could not presume that the jury ignored that evidence at any point of its deliberation. The instruction as tendered ranged beyond the limits of the pleading and the evidence and was an erroneous instruction. This court has well written on this point in the case of Hogan v. Kansas City Public Service Company, 322 Mo. 1103, 19 S. W. (2d) 707, l. c. 711:

"A trial court will not be convicted of reversible error for failure to give an instruction, unless the instruction is substantially correct, some authorities say strictly and entirely accurate. [14 R. C. L., par. 60, p. 801; 38 Cyc., p. 1707; Linton v. St. Louis Lightning Rod Co. (St. Louis Ct. Apps.), 285 S. W. 183, 187; Viles v. Viles (Springfield Ct. Apps.), 190 S. W. 41, 43; Trustees of Christian University v. Hoffman, 95 Mo. App. 488, 497, 69 S. W. 474.] And so we must uphold the ruling of the learned trial court."

We have read and examined the cases from foreign jurisdictions as cited by the appellant in its brief on this point but we cannot accept the conclusions that the appellant has drawn from these cases of other states. We think that if the appellant had been apprehensive that the jury might consider the injuries that plaintiff received in the automobile accident, in assessing damages in this case, then the appellant could have easily worded an instruction that would properly have informed the jury not to consider these prior injuries, yet, the instruction as offered by defendant could not in our opinion have had any reference whatever to the injuries received by plaintiff in the automobile accident and clearly as it was offered, it was, under this record a misstatement of the law and should not have been given. Instruction No. 10 as given was a proper direction to the jury so that the jury would not return a verdict against this defendant for the full amount of the compensation due plaintiff for her injuries received in this accident since plaintiff had received $4000 on her claim. We fail to see that defendant was harmed in the least by the refusal of the court to give Instruction No. 9, likewise we fail to see how appellant was harmed by the giving of Instruction No. 10.

V. Appellant next complains about the size of the verdict. The jury in the first trial returned a verdict for $20,000 against both defendants. After the case was reversed and remanded by this court, plaintiff received $4000 from the railroad company, and the jury at the second trial returned $12,000 for plaintiff against the present defendant. Since the case must be tried again we do not feel called upon to pass upon the question of excessiveness at this time. Two juries have heard the case and these juries have been within $4000 of each other. Plaintiff was severely injured and under the record here she made a clear case of negligence against the defendant street car company. In view of these facts and in view of the necessity of a third trial we think the question of the amount of the verdict should at this time be left to the sound discretion of the triers of the facts without any suggestions from this court. For the errors above noted this cause is reversed and remanded. It is so ordered. All concur.