239 S.W.2d 573 (1951)
MURPHY
v.
S. S. KRESGE CO.
No. 28122.
St. Louis Court of Appeals. Missouri.
May 15, 1951.
Motion for Rehearing or to Transfer to Denied June 13, 1951.
Ely & Ely and Richard H. Ely, all of St. Louis, for appellant.
Orville Richardson, Benjamin Roth, St. Louis, for respondent.
Motion for Rehearing or to Transfer to Supreme Court Denied June 13, 1951.
*574 McCULLEN, Judge.
This is a suit for damages for personal injuries alleged to have been sustained by plaintiff on December 7, 1944, when she fell on the floor of defendant's store located at the corner of Sixth and St. Charles Streets in St. Louis, Missouri. This case was before this court on appeal in 1947, and on October 21, 1947, the judgment therein in favor of plaintiff was reversed and the cause remanded for another trial because of error in an instruction on the measure of damages. See Murphy v. S. S. Kresge Co., Mo.App., 205 S.W.2d 252. The cause was tried a second time in June 1950 before the court and a jury, resulting in a verdict and judgment for plaintiff and against defendant in the sum of $1750. Defendant's motion for judgment in accordance with its motion for a directed verdict or in the alternative for a new trial was overruled and defendant duly appealed.
Plaintiff's petition alleged that defendant, a corporation, was engaged in operating a five and ten cent store in the City of St. Louis, Missouri, on the northeast corner of Sixth and St. Charles Streets; that on December 7, 1944, plaintiff was a customer in defendant's store and while proceeding along an aisle was caused to slip by reason of water thereon; that as a result of slipping the heel of her shoe was caused to catch in an opening in the floor, as a direct result of which plaintiff was caused to fall and be seriously and permanently injured; that plaintiff's injuries were the direct and proximate result of negligence of the defendant in the following respects: a. That the defendant knew or by the exercise of ordinary care could have known of the wet and defective condition of the floor at the place where plaintiff fell in time thereafter to have remedied said condition or given plaintiff warning thereof and thereby have prevented her from falling. b. That defendant knew or by the exercise of ordinary care could have known of the dangerous condition of the floor at the point where plaintiff fell in time to have remedied said condition or warned plaintiff thereof. c. That defendant failed to exercise ordinary care to maintain the floor at the place where plaintiff fell in a reasonably safe condition for customers particularly plaintiff; that as a direct and proximate result of defendant's negligence aforesaid plaintiff was caused to fall to the floor and received injuries to her legs, knee, ankles, left hip and the aggravation of a pre-existing dormant arthritis condition of her knees and hip which became active and progressive as a result of said fall and that plaintiff will permanently suffer from said arthritis condition and pain and limitation of motion of her legs as a direct result thereof.
The answer of defendant admitted its corporate existence and that it was engaged in the business of operating a five and ten cent store in the City of St. Louis, Missouri, as alleged in plaintiff's petition but denied the other allegations of plaintiff's petition. Defendant also pleaded in its answer that whatever injuries, if any, plaintiff sustained at the time and place mentioned in her petition were the result of her own negligence and carelessness directly and proximately contributing thereto in that if there was any water on the floor of defendant's store it was well known to plaintiff or, by the exercise of ordinary care, would have been known to her before she stepped or walked upon the floor and in time to have avoided stepping and walking thereon which plaintiff negligently failed to do.
Defendant's first contention is that the court erred in giving instruction No. 1. This contention is based on the ground that there is no evidence from which the jury could find that "defendant, or its employees in charge of said store, knew, or by the exercise of ordinary care could have known" of the alleged condition of the floor "in time to have remedied the same," and that there is no evidence whatever of any notice to defendant of the alleged condition of the floor.
Defendant also contends that the court erred in giving instruction No. 2 and asserts there is no evidence from which the jury could find that defendant failed to exercise ordinary care to keep its aisles in a reasonably safe condition. These *575 contentions of defendant require a review of the evidence.
Plaintiff testified that at the time of the occurrence herein complained of she had a little place of business on Cherokee Street in the City of St. Louis where she sold costume jewelry and repaired purses; that about 11 o'clock on the morning of December 7, 1944, she entered defendant's store intending to buy some tissue wrapping paper and that: "I just walked in and I got inside the door, probably as far from the door as the end of that desk over there, and I turned around and when I did I just hit aas if I had stepped some way that I never could explain to you exactly, but I just stepped, and then I took another step, and went right back in the same place and down I went." Counsel for the respective parties agreed that the distance "from the door" mentioned by plaintiff was about eight or ten feet. Plaintiff further testified: "I went down on my knees, and then my face went right down, too. My whole front was muddy and sloppy, and I sat there for a few minutes, and there was two colored ladies sitting there at the colored counter, and they helped me up."
Further testimony by plaintiff was that she was then taken to the first aid room by an employee of defendant where they gave her first aid treatment and suggested that she go to a doctor; that later she went to Dr. Sutter's office in the Frisco Building where she was treated by Dr. Sutter, after which she went on to her home and later went back to her shop to make some deliveries.
With respect to the fall, plaintiff testified:
"When you were discussing what caused you to fall, did you mention something about your heel? What I am trying to find out is what caused you to fall? A. Well, there was a big, long crack in the floor.
"Q. And did you see the crack before you fell? A. No, I wasn't even looking for a crack; I was looking for the counters.
"Q. Did you see the crack after you fell, after you were on the floor? A. Sure, when I was down on the floor I could see what threw me down.
"Q. About how wide was this crack? A. Oh, it was a half inch or three quarters of an inch.
"Q. Was it right in the middle of a board or where two boards are joined together? A. No, it was right in the middle it wasn't in the middle; it was where the boardsI don't know what you call itwhere the boards were put together in the middle, where they come together, in the lengthways of the board."
Plaintiff further testified that there was slush and snow on the floor that had been carried in on people's feet; that there was a lot of it; that "it was nasty and slushy"; that the streets and sidewalks were slushy and muddy.
Plaintiff's testimony at the former trial was read to her and she was asked whether or not she had then testified as follows:
"Q. Did you notice the crack or the hole, that was in the floor? A. You couldn't notice anything until you got down on the floor."
Plaintiff then answered: "A. I must have said it because it would not be here if I hadn't said it, but I don't remember I don't even remember looking at the floor until I got down."
She further testified on cross examination at the trial out of which the present appeal arises as follows:
"Q. Now, did you slip on this water and slush you say was on the floor; did that cause you to slip? A. I didn't slip; my heel just turned.
"Q. You say you did not slip at all? A. I didn't slip until I slid into that hole. My heel slid back. After I righted my foot it evidently didn't slip far enough one way or the other and slipped right back into the crack again."

* * * * *
"Q. You say now you did not slip in anyA. Well, when I went in my heel hit that.
*576 "Q. I just want you to answer that question. A. I righted myself, then slipped.

* * * * * *
"Q. * * * Now you say that you did slip or that you did not slip? A. I didn't slip until my heel turned in that. Then I righted myself, and then I slipped, and that is when I went down.
"Q. I will ask you once more. Now, did you slip? A. Yes, I slipped after my heel had turned and I righted myself, then when I caught thisthere was a big colored lady there and I grabbed her, but it didn't break my fall."
Plaintiff further testified that for about two weeks after the fall she treated herself but at the end of two weeks her legs and her foot were swollen and she then had to go to a doctor and went to Dr. Haile; that Dr. Haile told her to apply heat and cold and to stay off her feet or they would never get better; that she went to Dr. Haile for over a year and he gave her heat treatments and pills so that she could sleep and to allay the pain; that she stopped going to the doctor about two years prior to the trial but the trouble with her knees never left her; that when she sits for a while "they seem swollen and I have to get them straightened and to get them to mesh right"; that she had never had any trouble like that before; that at the time of the trial nothing was wrong with her except the condition of her knees.
Doree Pellarin, a window trimmer employee at defendant's store for about nine years, testified that she was familiar with the condition of the floor in the area where plaintiff fell and that the floor "was just as even as it could be, to my estimation, but I never seen any cracks or holes in it."
Camille Bridwell, employed at defendant's store at counter 19 at the time plaintiff fell, testified that she heard plaintiff fall and saw her immediately thereafter on her knees on the floor; that the floor was wet at that time because it had been raining and people tracking in had caused the floor to be wet; that she had never noticed any holes or openings in the floor although she crossed that point four or five times a day.
Luella Schoen, floor lady at defendant's store, and employed by defendant for about 26 years, testified that when she was told that a lady had fallen on the floor she went over and helped plaintiff up and noticed that her stocking was muddy and that the floor was wet where she fell; that plaintiff did not mention the fact that she had caught her foot in a crack or anything. The witness testified that she was familiar with the condition of the floor at the place where plaintiff fell and there was nothing the matter with the floor at all and that she did not observe any openings or cracks between where the boards were put together; that from the year 1918 until the year 1944, she had never seen a hole or crack anywhere in the sales floor and that it had never been repaired to her knowledge.
Defendant introduced in evidence a statement of Marilyn Brooks and it was agreed by counsel for the parties that Marilyn Brooks, if present, would testify that she was an employee of defendant's store for about six months from June 1944, until January 1945; that she saw plaintiff sitting on the floor where she fell; that the witness had passed over that spot or close to it many times, at least, twice a day, during the period of her employment; that the floor was hard wood and there were no holes or cracks in it at that place.
Defendant also introduced in evidence, with consent of plaintiff's counsel, a statement of Vera Hulenblock, a waitress employed at defendant's store for about 7 years prior to 1946, who stated that she saw plaintiff that day after she fell and asked plaintiff what had happened; that plaintiff said she fell but did not say anything about catching her heel in a hole or crack; that the witness knew the condition of the floor where plaintiff fell; that it was a good floor and there were no cracks or holes in it; that she wore high heel shoes all the time and had walked across the floor every day for seven years and never saw a hole or crack in it.
*577 Defendant's argument in support of its points I and II, namely, that there was no evidence from which the jury could find that by ordinary care defendant could have known of the condition of the floor "in time to have remedied the same" is based upon a number of cases, cited by defendant, in which there was no such state of facts as we have in the case at bar. For instance, in Williams v. Kansas City Terminal R. Co., 288 Mo. 11, 231 S.W. 954, cited and relied on by defendant, plaintiff's petition therein alleged that she was injured because the steps on which she fell were "wet and slippery." There was no evidence in that case showing a defective condition in the structure of the steps and the court very properly held that plaintiff did not make a case for the jury by merely proving that the steps of the stairway on which plaintiff fell were made wet and slippery by defendant's customers who brought rainwater in from the outside on their footwear, clothing and umbrellas.
In the case at bar, however, we have not only evidence showing that the floor of defendant's store was slippery because of slush and snow thereon that had been carried in on people's feet from the outside, but in addition there was evidence showing a "big, long crack" about one-half to three quarters of an inch wide in the structure of the floor itself.
Plaintiff's testimony was that her heel became caught in the crack in the boards of the floor and she was thereby caused to fall. We, therefore, have before us a case which is clearly distinguishable from cases where water or other foreign matter has been brought in, placed, or dropped on a floor or on steps a short time before the fall and injury. It appears from the evidence in the case at bar that the floor itself had been built in 1918 when the building was constructed and no work or repairs had been done on the floor since that time. There being no evidence to show that the "long crack" in the board of the floor came into existence by reason of any sudden accident or shock or other similar occurrence at any time before plaintiff fell it is reasonable to infer that the crack in the floor must have come into existence by gradual wear through the hard usage to which it was subjected throughout the many years after it was originally constructed.
Under the long established and well known rule it is our duty in determining the question of whether plaintiff made a case for the jury to take plaintiff's testimony as true, unless contrary to physical laws, and give her the benefit of all reasonable favorable inferences and disregard defendant's evidence where it conflicts with that of plaintiff. Applying that rule, the pivotal question for determination is whether or not defendant in the exercise of ordinary care could have known of the defect in the structure of the floor itself in sufficient time before plaintiff fell to have made it reasonably safe for the use of its customers.
In a comparatively recent case decided by this court the evidence showed that a defect in the top step of a stairway in defendant's store consisted of a metal strip which protruded one-eighth of an inch beyond the step proper. In that case the defendant therein contended that there was no evidence to show that it had knowledge of such defective condition a sufficient length of time to have remedied it. This court, answering such argument said:
"Nor was plaintiff's case to be taken from the jury upon the ground of a lack of evidence showing that defendant had had knowledge of the projection in time to have remedied the condition before the happening of the accident.
"While it is true that plaintiff had no direct proof of actual knowledge, the evidence amply revealed a state of facts from which defendant was to be charged with constructive knowledge.
"The condition complained of was obviously not one which suddenly came into existence, but instead was the result of gradual wear from the constant use which had been made of the stairway for the period of sixteen months after the metal device had been installed at the edge or nosing of the step." Haverkost v. Sears, *578 Roebuck & Co., Mo.App., 193 S.W.2d 357, 361.
A decision by the Kansas City Court of Appeals rather strikingly illustrates the difference between a case involving a physical defect in a structure and one involving the presence of a foreign substance or object at the site of a fall. In said case the evidence showed that a protruding screw in a metal plate on a step in a stairway was worn and loose and caused plaintiff to fall, and defendant therein contended that plaintiff's evidence had not shown that defendant had any notice of the condition. Answering that contention the court said: "The defective condition of the step in question was not due to some foreign substance getting thereon but to a physical condition, that is, a state of disrepair. Taking the evidence in its most favorable light to the plaintiff it is apparent that there was sufficient therefrom for the jury to have justly arrived at the conclusion that the physical condition, in which the step was found, after plaintiff's fall, indicated that the defect was one that did not come into existence at the time of, or immediately before, plaintiff's fall but was of sufficient long standing to give defendant ample time in which to have discovered and repaired the same or withdrawn, from public use, that part of the step which was in disrepair." Stewart v. George B. Peck Co., 234 Mo.App. 864, 874, 875, 135 S.W.2d 405, 410.
That defendant has failed to take note of the difference between cases which involve mere foreign substances on floors and those which involve a defective physical condition in the structure of the floor itself is shown by defendant's citation of Stark v. Great Atlantic & Pacific Tea Company, 102 N.J.L. 694, 133 A. 172, 173, which, instead of supporting defendant's contentions, supports plaintiff's contention. In that case plaintiff's testimony was that her foot was caught in a splinter on defendant's floor. The trial court had directed a verdict for defendant on the ground that no notice of the defect had been shown. On appeal the judgment for defendant was reversed and the cause remanded, the Court of Errors and Appeal holding that the case should have been submitted to the jury. In its opinion the court, after stating that in some cases mere proof of a defect, without proof of notice thereof in time to have remedied it, is not enough, went on to say: "But it is equally certain that there are conditions of disrepair and deterioration causing injury which from their very nature and character cannot come into existence coincident with the happening, but must, by more or less slow and gradual processes covering appreciable periods of time, have grown from a condition of reasonable safety to one not safe, as measured by the rule of reasonable care. Such cases would present a question for jury determination as to whether or not the condition had existed for such period of time as to give to the party chargeable with the care and maintenance reasonable time and opportunity to inspect and repair, if necessary." Stark v. Great A. & P. Tea Co., supra, 133 A. 172, loc. cit. 173. (Emphasis ours.)
Although the Stark case, supra, is cited by defendant herein we find that it is really authority for holding against defendant's contention. It is in harmony with our Missouri decisions, supra, and justifies us in holding that the evidence of the existence of the long crack in defendant's floor was sufficient to warrant the inference that said condition came into existence gradually through hard usage over a long period of time by many people walking thereon prior to plaintiff's fall, thus affording ample time in which by the exercise of ordinary care defendant could have discovered its existence and the reasonable likelihood of its causing injury to someone and made it reasonably safe.
A short review of some of the cases cited by defendant herein shows further that defendant has failed to distinguish between cases involving defective structural physical conditions and those involving mere foreign substances on a floor.
Heidland v. Sears-Roebuck & Co., 233 Mo.App. 874, 110 S.W.2d 795, cited by defendant herein, involved slippery stairs because *579 they were wet and plaintiff fell thereon. The case did not involve any kind of a structural defect. A recovery for plaintiff was properly denied.
McKeighan v. Kline's, Inc., 339 Mo. 523, 98 S.W.2d 555, cited by defendant herein, did not involve any structural defect in the floor. The evidence showed that plaintiff therein slipped on oil tracked into the vestibule of defendant's store. Plaintiff was properly denied recovery because there was no evidence to show defendant had notice of the condition a sufficient length of time to have remedied it.
In Robinson v. Great Atlantic & Pacific Tea Co. et al., 347 Mo. 421, 147 S.W.2d 648, another case cited by defendant herein, there had been a judgment for plaintiff at the trial. On appeal the judgment was properly reversed. No structural defect was involved in said case. Plaintiff therein had tripped over a box of sweet potatoes in the vestibule of defendant's store. There was no evidence to show who put the box there or when it was put there.
Keen v. City of St. Louis, Mo.App., 189 S.W.2d 139, also cited by defendant herein, did not involve any structural defect in a floor. In that case an orange peel on the floor of a public market caused plaintiff to slip and fall but there was no evidence to show how long the peel had been on the floor. The judgment for the defendant City was properly affirmed.
Defendant herein cites a number of other cases but we believe it would serve no useful purpose to analyze them separately. It is sufficient to say that not any of them dealt with a defective physical condition in the structure of the floor itself such as we have in the case at bar.
Long v. F. W. Woolworth & Co., 232 Mo.App. 417, 109 S.W.2d 85, is a little different from the other cases cited by defendant but it does not constitute authority that would justify us in holding that the evidence in the case at bar was not sufficient to take the case to the jury. In that case plaintiff sued defendant for damages for personal injuries which she sustained from a fall caused by her heel catching in a hole in the floor of defendant's store. There was evidence to show that the hole had existed for several years. An instruction for plaintiff erroneously directed a verdict for her without requiring a finding that the defendant knew or by ordinary care could have known that the condition created by the hole was unsafe and dangerous. The judgment was reversed and the cause remanded because of such improper instruction. It will thus be seen that said case is no authority for defendant's contention in the case at bar.
Howell v. Kroger Grocery & Baking Co., Mo.App., 178 S.W.2d 101, cited by defendant, does not support its contention. In that case plaintiff, a crippled customer of defendant, fell in defendant's store when her foot slipped upon a worn loose threshold which sagged down under her foot. In that case this court said: "An inspection made shortly after plaintiff's injury disclosed that such condition was not a recent one, but that it had existed for more than three or four months, and was in fact the result of constant wear upon the threshold over a period of several years." Howell v. Kroger Grocery & Baking Co., Mo.App., 178 S.W.2d 101, 102, 103. Because of the nature of the defective condition the court held that the question of the storekeeper's negligence in maintaining an unsafe threshold as well as the customer's contributory negligence in failing to notice the threshold were for the jury's determination.
A consideration of all the evidence as well as the law applicable in the case at bar leads inescapably to the conclusion that the court did not err in giving instructions No. 1 and No. 2, complained of by defendant submitting thereby the issue of defendant's negligence to the jury for their decision.
Defendant contends in its Points IV and V that the court erred in overruling its motion for a directed verdict at the close of plaintiff's case and its similar motion at the close of the whole case. These points are the same in substance as defendant's Points I and II except that *580 they are presented in different forms. What we have heretofore said herein with respect to defendant's Points I and II also disposes of these Points IV and V except the point on contributory negligence.
On the last mentioned point defendant contends that the evidence showed that plaintiff was guilty of contributory negligence as a matter of law in failing to watch where she was walking or stepping, in that she knew that water had been tracked into defendant's store on people's feet because of the wet and slushy condition of the streets and sidewalks at that time. We are unable to agree with defendant on this point. When plaintiff entered defendant's store on the day mentioned she, of course, could see that the floor was wet and slushy but there was nothing to indicate to her the presence of the "big, long crack" in the structure of the floor. She had no reason to anticipate or look for cracks in the floor. She did what ordinarily prudent persons usually do upon entering such a store. She looked around the store to locate the particular counter or counters containing the merchandise she wanted to buy. She was an invitee in the store and defendant owed her the duty of exercising ordinary care to have the floor of its store in a reasonably safe condition for the use of its customers. The condition of the floor was not of a character to have readily attracted the attention of plaintiff who had the right to assume that the floor was being maintained in a reasonably safe condition for the uses and purposes for which it was intended. Sullivan v. S. S. Kresge Co., 236 Mo.App. 1191, 1198, 163 S.W.2d 811, 814. Haverkost v. Sears, Roebuck & Co., Mo.App., 193 S.W.2d 357, 363.
On this question of contributory negligence in a similar situation our Supreme Court has said: "It is true that the law requires a person to make ordinary use of his faculties to observe and avoid danger. But it is equally true that one is not required to look out for danger where there is no reason to apprehend any." State ex rel. Elliott's Dept. Store Co. v. Haid et al., 330 Mo. 959, 965, 51 S.W.2d 1015, 1017. See also Long v. F. W. Woolworth Co., Mo.Sup., 159 S.W.2d 619, 624.
We hold that plaintiff was not guilty of contributory negligence as a matter of law. This question, and the question of whether or not defendant was negligent, were matters for the determination of the jury.
Defendant contends in its Point III that the court erred in giving instruction No. VI because it allowed the jury to take into consideration such pain of body "and anguish of mind" as the plaintiff may have suffered in the past and may suffer in the future. It is argued that such instruction was broader than the pleadings. We cannot agree with defendant on this point. Plaintiff alleged that she had suffered physical injuries, which were set forth in her petition, and that such injuries had caused and would cause her pain. In an early case our Supreme Court definitely decided this question by holding that physical pain and mental anguish "usually, and to some extent necessarily, flow from or attend bodily injuries" and that "It is not necessary to make specific proof of pain and mental anguish. These elements of damage are sufficiently shown by the evidence which discloses the nature, character, and extent of the injuries. From such evidence the jury may infer pain and mental anguish." The Supreme Court further said: "that where bodily injuries are alleged in the petition, and proof thereof made upon the trial, and the person injured is the plaintiff, physical pain and mental anguish are proper elements of damage, though not stated in the petition." Brown v. Hannibal & St. Joseph Railroad Company, 99 Mo. 310, 318, 319, 12 S.W. 655, 656. See also Kennedy v. St. Louis Transit Co., 103 Mo.App. 1, 6, 7, 78 S.W. 77, 78. We hold that the court did not err in the case at bar in giving said instruction No. VI.
Defendant earnestly insists that the trial court erred in permitting Dr. F. G. Pernoud to testify concerning the complaints *581 made by plaintiff to him at the time the doctor examined her on June 16, 1950, for the purpose of testifying in the case. Defendant cites a large number of cases in support of this contention. At the very beginning of the doctor's direct examination the following occurred: "Q. Omitting past history, Doctor, that is any relation of past events, I wish you would tell this Court and jury what her complaints were as she sat in your office just recently."
At this point defendant's counsel objected on the ground that what plaintiff had told Dr. Pernoud was inadmissible; that it would be improper for the doctor to give any history of plaintiff's complaints because he had examined her only for the purpose of testifying and not for treatment. The objection was overruled and the doctor testified, "She told me she had fallen" but was interrupted by counsel for plaintiff who stated to the witness: "Q. Now you can't say that. That is past history, Doctor; I want to know what her complaints were at the time she sat in your office. A. She complained of pain."
After further objection by counsel for defendant the court ruled: "You may testify, Doctor, as to any of her present complaints at the time she visited your office." Whereupon the doctor testified: "She complained of pain and disability about both knees, more in the right knee than in the left, this pain radiating up into the thighs and down into her legs and to her feet. I said both pain and disability because she got about with difficulty." Defendant contends that the court erred in admitting such testimony.
The first case cited by defendant in support of its contention is Coghill v. Quincy O. & K. C. Ry. Co., Mo.App., 206 S.W. 912. We find nothing in that case that would justify us in holding that the testimony of the doctor admitted in the case at bar constituted error. It is true the court in the Coghill case, supra, discussed various conditions under which a physician may and may not testify concerning statements made to him by a patient relative to the patient's condition or symptoms, but in actually making its decision the court held that the admission of the doctor's testimony therein did not constitute error, and affirmed the judgment for the plaintiff therein.
Defendant next cites Berry v. Kansas City Public Service Co., 343 Mo. 474, 121 S.W.2d 825, in support of its complaint against the admission of Dr. Pernoud's testimony. An examination of that case discloses that the court held that a patient's statement of symptoms experienced in the past is hearsay and does not form a proper basis for an opinion and cannot be taken into account by the physician in giving his opinion. However, the court also held that the statements of a patient to his physician of the patient's then existing symptoms may be relied upon as a proper basis for an opinion by the physician.
In the case at bar Dr. Pernoud was not asked for, and did not give testimony concerning any past ailments or condition of plaintiff but confined his testimony, in accordance with the court's ruling, solely to statements made to him by plaintiff of her then present condition and symptoms as she then sat there in his office. The ruling of the court in the Berry case, supra, cited by defendant herein, does not support defendant's contention that the admission of Dr. Pernoud's testimony was error. On the contrary it supports the view that such testimony was admissible. The Supreme Court in that very case said: "As we understand the rule in this state the doctor can only rely on the statements of the patient when the statements pertain to present symptoms, pains and disorders. The doctor must not accept statements of the patient for past ailments." Berry v. Kansas City Public Service Co., 343 Mo. 474, 486, 121 S.W.2d 825, 832. (Emphasis ours.)
The distinction between what a physician may and may not properly testify to concerning statements made to him by a patient is clearly and simply stated in Gladney v. Mutual Life Ins. Co. of New York, Mo.App., 186 S.W.2d 538, 544, as follows: "The dividing line between symptoms related to the doctor which may be relied upon and those which may not be relied upon is merely the line which divides the present from the past."
*582 Phares v. Century Electric Co., Mo.App., 131 S.W.2d 879 is another case cited by defendant herein in support of its contention, but instead of supporting defendant's contention we find it supports plaintiff's contention. In that case this court said: "It is also true that the doctor examined plaintiff largely, though perhaps not entirely, for the purpose of preparing himself to testify as an expert witness in the case, and not for the ordinary purpose of treating plaintiff as his physician. Defendant sought to make much of this fact as affecting the doctor's right to rely upon any complaints either past or present, and undoubtedly that circumstance was not wholly without its relevancy to the situation (Evans v. Missouri Pacific R. Co., supra [342 Mo. 420, 116 S.W.2d 8]), though it affected only the weight and not the competency of the doctor's testimony, if otherwise competent under the rule of evidence to which we have heretofore referred. As the record is presented, the court committed no error in permitting Dr. Hoge to testify to his opinion, and we rule this point against defendant." Phares v. Century Electric Co., Mo.App., 131 S.W.2d 879, 884.
In Evans v. Missouri Pacific R. Co., 342 Mo. 420, 116 S.W.2d 8, our Supreme Court clearly and definitely held that a physician may testify as to present symptoms or complaints of a patient and of his observation from examination of the patient and in giving an opinion may testify not only as to what he observed but also as to what the patient told him about his present symptoms but that he may not give statements of the patient as to past physical condition or circumstances surrounding the injury or the manner in which the injury was received. See also Corbett v. Terminal Ry. Ass'n of St. Louis, 336 Mo. 972, 982, 82 S.W.2d 97, 103.
Defendant cites no Missouri case and we know of none which holds that the fact that a physician examines a patient not for treatment but for the purpose of testifying in court precludes the physician from testifying concerning statements made by the patient of his then present complaints and symptoms.
In the case at bar the court very carefully ruled that Dr. Pernoud's testimony as to plaintiff's statements of her complaints must be confined to her then present complaints at the time he examined her, and the doctor's testimony was accordingly so restricted. We find no reversible error in the admission of the testimony complained of.
There being no reversible error in the record, the judgment of the trial court should be affirmed. It is so ordered.
ANDERSON, P. J., and BENNICK, J., concurs.